IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COTTMAN TRANSMISSION          :     CIVIL ACTION
SYSTEMS, LLC, ET AL.          :     NO. 05-6369
                              :
        v.                    :
                              :
DALE KERSHNER, ET AL.         :
                              :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          June 22, 2007


        In 2005, numerous former and current franchisees (the
"Franchisees") of Cottman Transmission Systems, LLC filed suit
against Cottman and its in-house advertising agency, Ross
Advertising, Inc. (collectively, "Cottman"), in the District of
Minnesota.[1]  This initial action spawned the filing of various
actions across several other states, all of which have been
consolidated and are now before this Court.  See Order of January
5, 2007 (doc. no. 54).  Presently before the Court is the
Franchisees' Second Motion for Leave to File a Second Amended
Complaint (doc. no. 62).  For the reasons set forth below, the
Court will grant in part and deny in part the instant motion.


I.    BACKGROUND

        The Cottman franchise system is a chain of stores that

---

        [1]    The initial action was styled S&G Janitschke, Inc., et
al., v. Cottman Transmissions Sys., LLC, et al., No. 05-1294 (D.
Minn.).

perform repairs to automobile transmissions.  The essence of the Franchisees' claims in this action is that Cottman misrepresented its franchise system - for example by inflating the average earnings of Cottman stores - to induce the Franchisees to enter into a franchise agreement with Cottman.  Once ensnared in the agreement's clutches, the Franchisees allege, Cottman required them to make steep investments and pay expensive fees to Cottman. Moreover, according to the Franchisees, Cottman failed to provide the support it promised under the franchise agreement, making the successful operation of a Cottman franchise difficult, if not outright impossible.  Perhaps the most serious of the allegations is that Cottman maximized its profits by "churning" franchise stores at the Franchisees' expense.  When a franchisee's store failed, Cottman would coerce the franchisee to continue to operate the failing store just long enough to sell the store and its equipment back to Cottman at a significant loss.  Then, as the Franchisees tell it, Cottman resold the same store and equipment, at a significant profit, to the next franchisee unfortunate enough to be duped by Cottman's representations into entering into the franchise agreement.


## II.  MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Franchisees now seek leave to amend their complaint[2] to: (1) add nine new plaintiff franchisees; (2) add American Driveline Systems, Inc. and American Capital Strategies, Ltd. as party defendants; (3) reinstate claims against Todd P. Leff, Cottman's President and Chief Executive Officer; (4) add facts relating to the merger between Cottman and AAMCO Transmissions that support the Franchisees' claim for breach of contract and violation of the implied covenant of good faith and fair dealing; (5) add a cause of action against Cottman under the Missouri Franchise law; and (6) add, at a future, date seven trustees of the bankruptcy estates of former Cottman franchisees when those trustees have received court approval to participate in the litigation.

A.   <u>Legal Standard for Amendment of Complaints</u>

Rule 15 of the Federal Rules of Civil Procedure allows a party the right to amend its complaint once as a matter of course at any time before any answer is served.  <u>See</u> Fed. R. Civ. P. 15(a).  Otherwise a party may amend its complaint only by

---

[2]   The Franchisees filed an earlier motion for leave to file an amended complaint, but after receiving Cottman's response, submitted a reply that attached a "Revised Proposed Second Amended Complaint (doc. no. 60).  Cottman objected that this new revised complaint was "vastly different" from the original proposed amended complaint.  On February 13, 2007, the Franchisees withdrew their original motion and filed a second motion to amend their complaint (doc. no. 62).

leave of court, and "leave shall be freely given when justice so requires." <u>Id.</u>  The Supreme Court has mandated that a plaintiff "be afforded an opportunity to test his claim on the merits" rather than having the claim dismissed by denying him leave to amend his complaint:

> In the absence of any apparent or declared reason -
> such as undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance
> of the amendment, futility of amendment, etc. - the
> leave sought should, as the rules require, be 'freely
> given.'

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  As the Third Circuit has articulated the standard, a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.  <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002) (citing <u>Foman</u>, 371 U.S. at 182).

Here, Cottman argues that the Franchisees' proposed amendments are futile.  In inquiring as to when amendment would be futile, the Court applies the same standard used in a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  <u>See</u> <u>McGreevy v. Stroup</u>, 413 F.3d 359, 371 (3d Cir. 2005); <u>Milburn v. Girard</u>, 441 F. Supp. 184, 187 (E.D. Pa. 1977) ("If the amendment sets forth a claim upon which,

4

as a matter of law, plaintiff is not entitled to relief, leave to amend should be denied."). Denying amendments on the ground of futility allows the court to whittle away legally incognizable claims at the amendment stage instead of forcing another round of motion practice under Rule 12(b)(6). See, e.g., McGreevy, 413 F.3d at 271 n. 6 (affirming a district court's dismissal, on the ground of futility, of a claim asserted in plaintiff's original complaint).

     B.    <u>Franchise Statute Claims Against Todd P. Leff</u>

        Todd P. Leff is the President and Chief Executive Officer of Cottman and American Driveline. Leff Dec., Ex. A. to Cottman's Resp. Three subsets of Franchisees seek leave to assert claims against Leff under the franchise disclosure statutes in California (Count 3), Wisconsin (Count 28) and New York (Count 39). Cottman argues, however, that the Franchisees signed agreements that state that Pennsylvania law will govern the instant disputes, not the law of the location of their present or former franchises, and thus that the proposed amendments would be futile. Whether the claims under the state franchise statutes of California, Wisconsin, and New York are futile depends on the outcome of a choice-of-law analysis. That analysis requires the Court to determine whether the choice-of-law agreement between the parties precludes assertion of these

particular statutory claims.  Because the Court concludes that it does not, the Court will grant the Franchisees leave to amend their complaint to add these three specific counts.

### 1.   Choice of Law Standard

Where federal jurisdiction is based on diversity of citizenship, such as in the instant case, the Court must apply the choice-of-law rules of the state in which it sits.  St. Paul Fire & Mar. Ins. Co. v. Lewis, 935 F.2d 1428, 1431 n.3 (3d Cir. 1991) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)).  This Court sits in the Eastern District of Pennsylvania.  Thus, Pennsylvania choice-of-law rules apply.

Under Pennsylvania choice-of-law rules, "the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law."  Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999).  Generally, if the parties have agreed to the applicable law, that agreed-upon law shall be given effect.  Id.  A choice-of-law clause may be invalidated, however, if (1) the chosen state has no substantial relationship to the parties or the transaction, or (2) if application of the law of the chosen state would be contrary to a policy of a state with a materially greater interest than the chosen state in the determination of the particular issue.

6

Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994)

(citing Schifano v. Schifano, 471 A.2d 839, 843 (Pa. Super. Ct.

1984, Restatement (Second) of Conflict of Laws § 187).[3]

 Here, the Franchisees executed franchise agreements

that provide as follows:

> This Agreement and all related agreements have been
> entered into in the Commonwealth of Pennsylvania and
> any matter whatsoever which arises out of or is
> connected in any way with the Agreement or the
> franchise shall be governed by and construed and
> enforced in accordance with the laws of the
> Commonwealth of Pennsylvania.

License Agreement ¶29.  The first question is easily answered.

The parties clearly chose Pennsylvania law to govern disputes

that arose between them.  However, the second question still

remains: Should the choice-of-law provision be invalidated as to

the Franchisees' statutory claims for other reasons?


 2. <u>Substantial Relationship</u>

 Pennsylvania has a substantial relationship to the

parties and the transaction in this case.  Cottman's corporate

headquarters are in Pennsylvania.  The franchise agreement

requires the Franchisees to travel to Cottman's home office in

---

[3] The Third Circuit has recently reaffirmed its
prediction that the Pennsylvania Supreme Court would apply the
analysis of policies and interests laid out in Griffith v. United
Air Lines Inc., 203 A.2d 796 (Pa. 1964), to contract disputes in
addition to tort disputes.  Hammersmith v. TIG Ins. Co., 480 F.3d
220, 228 (3d Cir. 2007).

Pennsylvania to attend its three-week training class prior to opening a new Cottman franchise.  At the end of a successful training class, the franchise agreement is finally negotiated and executed between the parties in Pennsylvania.  Thereafter, payments made by a franchisee under the License Agreement are sent to Cottman at its home office in Pennsylvania.  Thus, the choice-of-law provision should not be invalidated on the grounds that Pennsylvania has no "substantial relationship to the parties or the transaction."  <u>Kruzits</u>, 40 F.3d at 55.

     3.   <u>Policy Interests</u>

       (a)  <u>Fundamental Policy</u>

       The next question is whether application of the choice-of-law provision would be contrary to the policy of a state with a materially greater interest than Pennsylvania in the determination of the issue.  The Court answers this question in the affirmative.

       In enacting their respective franchise disclosure statutes, California, Wisconsin, and New York expressed a clear policy to provide a heightened degree of protection to prospective franchisees regarding misrepresentations about a franchise system.  <u>See</u>, <u>e.g.</u>, Cal. Corp. Code § 31001 (the "California Franchise Investment Statute" or "CFIL") ("The [California] Legislature hereby finds and declares that . . .

8

California franchises have suffered substantial losses where the franchisor or his representative has not provided full and complete information regarding the franchisor-franchisee relationship . . . .  It is the intent of this law to provide each prospective franchisee with the information necessary to make an intelligent decision regarding the franchise being offered."); N.Y. Gen. Bus. Law § 680 ("The [New York] legislature hereby finds and declares that . . . New York residents have suffered substantial losses where the franchisor or his representative has not provided full and complete information regarding the franchisor-franchisee relationship . . . .")[4]; Maryland Staffing Servs. v. Manpower, Inc., 936 F. Supp. 1494, 1506 (E.D. Wis. 1996) (finding that the legislative history of the Wisconsin Franchise Investment Law demonstrates that the legislature wanted to protect Wisconsin franchisees from suffering substantial losses resulting from actions by "unscrupulous franchisors").

Moreover, the California, New York, and Wisconsin franchise disclosure statutes also contain "anti-waiver" provisions, i.e., provisions that preclude a franchisor from using a written provision to evade the protections of each

---

[4]     See also A.J. Temple Marble & Tile v. Union Carbide Marble Care,618 N.Y.S.2d 155, 159 (Sup. Ct. N.Y. Co. 1994) ("The [New York] Franchise Act deliberately was drafted to incorporate stringent disclosure and broad antifraud provisions.") (internal citation omitted).

state's respective franchise acts.  <u>See</u> Cal. Corp. Code § 31512
("Any condition, stipulation or provision purporting to bind any
person acquiring any franchise to waive compliance with any
provision of this law or any rule or hereunder is void."); N.Y.
Gen. Bus. Law § 687(4) ("Any condition, stipulation, or provision
purporting to bind any person acquiring any franchise to waive
compliance with any provision of this law, or rule promulgated
hereunder, shall be void."); N.Y. Gen. Bus. Law § 687(5) ("It is
unlawful to require a franchisee to assent to a release,
assignment, novation, waiver or estoppel which would relieve a
person from any duty or liability imposed by this article.");
Wis. Stat. § 553.76 ("Any condition, stipulation or provision
purporting to bind any person acquiring any franchise to waive
compliance with any provision of this chapter or any rule or
order under this chapter is void.").

    Courts in all three states have recognized that the
inclusion of an anti-waiver provision in a franchise statute
expresses the state's strong public policy favoring the
application of the statute to protect its citizens.  <u>See</u> <u>A.J.</u>
<u>Temple</u>, 618 N.Y.S.2d at 159 ("[T]he court finds that the
Legislature intended to prevent a franchisor from contracting out
of the liability imposed on the franchisor under the [New York
Franchise] Act by the inclusion of merger and waiver clauses.");
<u>Lulling v. Barnaby's Family Inns, Inc.</u>, 482 F. Supp. 318, 320-21

(E.D. Wis. 1980) (holding that the Wisconsin franchise disclosure statute's anti-waiver provision prohibited a franchisor from evading the requirements of the statute by using a choice of forum provision in its agreements); <u>Wimsatt v. Beverly Hills Weight Loss Clinics</u>, 32 Cal. App. 4th 1511, 1520 (Ct. App. 1995) ("[The CFIL is one of the most important protections California offers its franchisee citizens.").

Presented with precisely the same question now faced by this Court, a California court found that application of a franchise agreement's choice-of-law provision would violate California's public policy to protect its citizens from being fraudulently induced into franchise agreements:

> Here, California has a materially greater interest than Nevada in determining the validity of the license agreement.  The CFIL was enacted to effectuate California's policy of protecting franchisees from fraud and deception in franchise sales.  California has a significant interest in this dispute given Chong's allegations that defendants violated the CFIL's disclosure requirements.  There is no franchise disclosure law in Nevada and, thus, to enforce the choice of law provision in this case would defeat the strong fundamental policy of California's law.

<u>Chong v. Friedman</u>, No. A107716, 2005 WL 2083049, at *4 (Cal. Ct. App. Aug. 30, 2005).

Moreover, numerous courts in other jurisdictions have determined that the inclusion of an anti-waiver provision in a franchise disclosure statute prohibits a franchisee from waiving protection under that statute through a choice-of-law provision.

<u>Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.</u>, 386 F.3d 581, 607-10 (4th Cir. 2004) (holding that anti-waiver provision of Arkansas Franchise Act evinced fundamental public policy which overrode choice-of-law agreement, while Louisiana Dealer Act did not); <u>Cromeens, Holloman, Sibert, Inc. v. AB Volvo</u>, 349 F.3d 376, 391 (7th Cir. 2003) (holding that Maine Franchise law expresses strong public policy against enforcement of countervailing choice-of-law provisions); <u>Wright-Moore Corp. v. Ricoh Corp.</u>, 908 F.2d 128, 132 (7th Cir. 1990) (holding Indiana franchisee could not waive statutory rights through agreement to apply New York law, because Indiana franchise statutes prohibited waiver of its protections); <u>Pinnacle Pizza Co., Inc. v. Little Caesar Enterprises</u>, 395 F. Supp. 2d 891, 898 (D.S.D. 2005) (same, applying South Dakota franchise statute); <u>cf. Banek Inc. v. Yogurt Ventures U.S.A., Inc.</u>, 6 F.3d 357, 360 (6th Cir.1993) (noting that Michigan franchise law is not as strongly worded as Minnesota law and therefore did not evince public policy strong enough to void choice-of-law provisions).

Thus the Court finds that application of the choice-of-law provision would be contrary to the policies of California, Wisconsin, and New York, which have a materially greater interest than Pennsylvania in the determination of the issue of whether Cottman engaged in fraud and deception in franchise sales to residents of those states.

12

(b)   <u>Substantial Erosion of the Quality of Protection</u>

To determine if the application of the chosen law would be contrary to a fundamental policy of the other state, some courts in this district have also examined whether there are "significant differences" between the states' laws and whether the choice of Pennsylvania law would cause a "substantial erosion" of the quality of protection afforded under the other state's law.  <u>See</u> <u>Cottman Transmission Sys., Inc. v. Melody</u>, 869 F. Supp. 1180, 1183 (E.D. Pa. 1994); <u>Stone Street Services, Inc. v. Daniels</u>, No. 00-1904, 2000 WL 1909373, at *4 (E.D. Pa. Dec. 29, 2000).  The Court finds that an examination of these factors also supports its decision.

The standards and remedies available under the franchise disclosure statutes provide substantially more protection to the Franchisees than the application of the common law claims available under Pennsylvania law.  Under the California, New York, and Wisconsin franchise statutes, persons who directly or indirectly control other persons liable under the states' franchise acts are also liable without the need to pierce the corporate veil.  <u>See</u> Cal. Corp Code § 31302; N.Y. Gen. Bus. Law § 691(1); Wis. Stat. § 553.51(3).  Thus, the franchise disclosure statutes enable the Franchisees to bring actions against Leff in this case without having to pierce the corporate

13

veil.

Furthermore, under Pennsylvania common law fraud, the franchisor has the defense that its representations were not <u>mis</u>representations because they were factual.  Under the franchise disclosure statutes, on the other hand, the franchisor would have to establish that it provided information in a nonmisleading manner.  <u>E.g.</u>, Cal. Corp. Code § 31012 (expressly stating that under the Act, "'fraud' and 'deceit' are not limited to common law fraud or deceit").  Thus, under the franchise disclosure statutes, if Cottman cannot establish that the "earnings claim" information they provided was not misleading, such a difference could provide the difference between winning and losing.  <u>See also</u> <u>Healy v. Carlson Travel Network Assocs., Inc.</u>, 227 F. Supp. 2d 1080, 1094 (D. Minn. 2002) (stating that the standards of common law fraud are more "exacting" than the provisions against misrepresentations in the Illinois Franchise Disclosure Act, which includes misrepresentation provisions similar to the CFIL, the New York Franchise Sales Act, and the Wisconsin Franchise Investment Law).

Finally, under the New York Franchise Sales Act, the Franchisees can recover their reasonable attorneys' fees and costs, whereas under the common law, each side traditionally pays its own attorneys' fees.  <u>See</u> N.Y. Gen. Bus. L. § 691(1).

Judge Padova's reasoning in <u>Stone Street</u> is persuasive.

There, Judge Padova held that enforcing the Pennsylvania choice-of-law provision in lieu of the Kansas Consumer Protection Act would violate the strong public policy of Kansas.  2000 WL 1909373, at *4.  Judge Padova determined that the "diminished capacity" provision of the Kansas statute, which prohibited a party from taking advantage of a consumer due to the consumer's infirmity or inability to understand the transaction, stated a fundamental policy of Kansas, "particularly in light of the explicit non-waiver provision contained in the law."  Id.  He also concluded that applying Pennsylvania law would substantially erode the protections afforded under the Kansas Act.  Id.  While Pennsylvania common law causes of action regarding unconscionable contracts did provide the plaintiff with similar remedies, "these common law actions do not speak as directly to the instant case as the heightened protections under Kansas law."  Id.  In reaching its conclusion, Judge Padova considered the unequal bargaining power between the parties and the fact that Kansas's consumer protection law was designed to protect the residents of the state.  Id. at *5.

Here, as was the case in Stone Street, the relevant state franchise disclosure statutes provide a heightened degree of protection that would be substantially eroded if the Court were to enforce the choice-of-law provision to preclude the Franchisees from asserting claims under those statutes.

15

Moreover, as in Stone Street, there is unequal bargaining power
between Cottman and the Franchisees, and the franchise disclosure
statutes were specifically enacted to level the playing field and
protect the residents of these states from unscrupulous practices
by franchisors. See, e.g., Cal. Corp. Code § 31001. See also
Grand Kensington, LLC v. Burger King Corp., 81 F. Supp. 2d 834,
837 (E.D. Mich. 2000) (refusing to apply choice-of-law agreement
to franchisee's claim under Michigan franchise statutes, because
doing so would "would substantially erode the protection
plaintiffs enjoy under Michigan law").

        In support of its position, Cottman cites the case of
Cottman Transmission Sys. v. Melody, 869 F. Supp. 1180, 1187
(E.D. Pa. 1994), in which Judge Joyner specifically held that
Cottman's choice-of-law provision should be applied to preclude a
franchisee's assertion of certain claim under the CFIL.  The
Court is not persuaded that Melody's reasoning is applicable
here.  In Melody, the court compared the protections and remedies
for fraud and negligent misrepresentation under the laws of
California and Pennsylvania and, finding them "virtually the
same," held that "application of Pennsylvania law would result in
no 'erosion of the quality of protection' offered under
California law."  Id. at 1186.  However, the court did not
consider that Pennsylvania law had no equivalent of the CFIL, and
did not compare the protections and remedies available under the

16

CFIL.[5]  See id.  Thus, Melody is distinguishable.  Here, the
Court has compared Pennsylvania law with the CFIL and found that
the Franchisees will suffer a substantial erosion of the
protections afforded under the CFIL if left to Pennsylvania law
alone.

The cases of GNC Franchising LLC v. Sala, 2006 WL
1437170 (W.D. Pa. Mar. 13, 2006) and Cottman Transmission
Systems, LLC v. Bence, 2004 WL 739907 (E.D. Pa. Apr. 5, 2004) are
also inapposite.  Sala involved Florida's franchise statute,
which the court found did not even relate to the claims of that
franchise dispute.  2006 WL 1437170, at *3.  Bence involved
Michigan's franchise statute, and the court found that the
franchisee had "not demonstrated that he will suffer a
substantial erosion of the protections afforded a
franchisee if left to a [Pennsylvania] common law action for
fraud and material misrepresentation."  2004 WL 739907 at * 2.

_____

[5]     Perceiving this to be clear legal error, the Melody
franchisees moved for reconsideration, arguing that applying the
choice-of-law provision specifically to preclude actions under
the CFIL would violate California public policy, because the
franchisees would not be able to assert the equivalent of
violations of the CFIL under Pennsylvania law.  See Cottman
Transmission Sys. v. Melody, 869 F. Supp. 1180, 1187 (E.D. Pa.
1994).  The court refused to budge from its earlier decision,
stating that "merely because Pennsylvania does not have a statute
analogous to the CFIL does not mean that there has been a
'substantial erosion' of protections afforded a franchisee
leading to our application of California law."  Id.  In its
reconsideration, however, the court did not compare the rights
and remedies available under the CFIL to those available under
Pennsylvania common law.  See id.

Accordingly, the Court will decline to apply the franchise agreements' choice-of-law provision to preclude the Franchisees' from bringing claims under the franchise disclosure acts of California, New York, and Wisconsin.

C.   Consumer Protection Claims

The Franchisees also seek leave to amend their complaint to include claims against Leff, American Capital, and American Driveline under the consumer protection statutes of Arizona (Counts 1-2), Delaware (Counts 6-7), Florida (Counts 9-10), Massachusetts (Count 11-12), Nevada (Counts 14-15), New Hampshire (Counts 16-17), North Carolina (Counts 18-19), Ohio (Count 20), Oklahoma (Counts 22-23), Texas (Counts 24-25), Utah (Counts 26-27), and New Jersey (Counts 37-38).[6]  Cottman again resists the addition of these claims on the ground that the

---

[6]     The statutes in question include: the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.; the Delaware Consumer Fraud Act, 6 Del. Code Ann. §§ 2513 et seq.; the Florida Deceptive and Unfair Trade Practices Act, Fla. St. Ann. §§ 501.201, et seq.; the Regulation of Business Practices for Consumer Protection (Massachusetts), Mass. Gen. Laws Ch. 93A, §§ 1, et seq.; the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0915, et seq.; the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1, et seq.; the North Carolina Consumer Protection Act, N.C. Gen. Stat. §§ 75-1, et seq.; the Ohio Unfair Deceptive and Unconscionable Acts or Practices Act, Ohio Rev. Code Ann. §§ 1345-01, et seq.; the Oklahoma Consumer Protection Act, Okla. Stat. Tit. 15, §§ 751, et seq.; the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§17.41, et seq.; the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, et seq.; and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.

choice-of-law provision precludes assertion of these state
claims.  In this round of the analysis, the Court agrees with
Cottman.

First, the Franchisees have not pointed to any relevant
statute, legislative history, or caselaw indicating that, in
passing their respective consumer protection statutes, these
twelve states expressed a "fundamental policy" that would be
defeated by applying the choice-of-law provsion to preclude the
non-Pennsylvania consumer protection claims.  Importantly, these
consumer protection statutes do not appear to have anti-waiver
provisions, like the franchise disclosure statutes or the Kansas
consumer protection statute, that would indicate a legislative
intent to express such a fundamental policy.

The Franchisees appears to conflate harm to themselves
with the contravention of a public policy.  Of course, in a
federal system of government, the laws of the various states will
invariably differ from one another in some respects, often to the
advantage of this or that party.  However, that the application
of a choice-of-law agreement may be contrary to the interests of
a particular party is not sufficient reason to refuse to give
effect to the law agreed upon in a choice-of-law provision.  See
Assicurazioni, 195 F.3d at 164 (holding that, if the parties have
agreed to the applicable law, that agreed-upon law shall
generally be given effect).  Rather, a party challenging a

19

choice-of-law provision must show that its application would be contrary to a "materially greater interest" or "fundamental public policy" of another state.  The Franchisees have not made that showing here.

This decision is in accord with the decisions of other federal district courts in Pennsylvania that have held that a claim under an out-of-state consumer protection statute may not be asserted when the parties have contractually agreed that Pennsylvania law applies to their relationship.  See Hopkins v. GNC Franchising, Inc., 2006 WL 2266253 (W.D. Pa. Jan. 13, 2006) (enforcing Pennsylvania choice-of-law clause and applying Pennsylvania UTPCPL instead of Florida's consumer protection law); Amato v. KPMG LLP, 433 F. Supp. 2d 460 (M.D. Pa. 2006) (New York Statute); Bishop v. GNC Franchising Inc., 403 F. Supp. 2d 411 (W.D. Pa. 2005) (Indiana Statute); Fresh Start Inds., Inc. v. ATX Telecomm. Servs., 295 F. Supp. 2d 521 (E.D. Pa. 2003) (New Jersey Statute); Fin' Software Sys., Inc. v. First Union Nat'l Bank, 1999 WL 1241088 (E.D. Pa. Dec. 16, 1999) (North Carolina Statute).

Because it would be futile to allow the Franchisees to amend their complaint to add claims under non-Pennsylvania consumer protection acts, the Court will not grant them leave to

do so.[7]


    D.    <u>Additional Facts Regarding the Merger Transaction</u>

        The Franchisees also seek to add to their complaint factual allegations related to the merger between Cottman Transmission and AAMCO Transmissions that took place in 2006. Specifically, they allege that the merger constituted a <u>de facto</u> termination of the franchise agreements, in violation of Cottman's promise that it would not terminate the franchise agreements without cause or giving a chance for the Franchisees to cure any defects.  Thus, these allegations support the Franchisees' already-existing claims for breach of contract and violation of the implied covenant of good faith and fair dealing. Allowing the Franchisees to include these new allegations would not prejudice Cottman or confuse the trier of fact.

        Rule 15 mandates that "leave [to amend a complaint] shall be freely given when justice so requires."  The well reasoned opinion in <u>Flynn v. Health Advocate, Inc.</u>, No. Civ. 03-3764, 2004 WL 1588235, at *4 (E.D. Pa. July 8, 2004), provides

---

    [7]    For similar reasons, the Court will not grant the Franchisees leave to add claims under the California Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200, et seq. (Counts 4-5) or the Missouri Franchise Law, Mo. Stat. §§407.400, et seq.. They have not shown that application of the choice-of-law agreement would be contrary to a "materially greater interest" or "fundamental public policy" of California or Missouri as expressed in those particular statutes.

an instructive counterpoint to this case, where leave was denied
because the proposed amendments would have radically altered the
scope and nature of the case and beared no more than a tangential
relationship to the original action.  In _Flynn_, the plaintiffs
sought leave to assert new claims against the law firm that
represented the original defendant in the case.  _Id._ at *5.  The
plaintiffs alleged that the law firm, as part of its
investigation, improperly "hacked" into a website to review
archived web pages of the plaintiffs.  _Id._  The court denied
leave to amend for two reasons.  First, allowing the plaintiffs
to sue the law firm would require the original defendant to
obtain new counsel, prejudicing that defendant.  _Id._  Second, the
court found that the proposed claims related to novel concepts
such as "hacking" and licenses on web pages that were only
tangentially connected to the original complaint and would likely
lead to significant confusion of the issues.  _Id._

       Cottman has not shown the same potential for prejudice
or confusion that was shown in _Flynn_.  Cottman will not have to
obtain new counsel.  Moreover, although the new allegations only
pertain to thirty-five of the sixty-four Franchisees, this fact
would not "vastly increase[]" the likelihood of confusion as
Cottman contends.  _See_ Dfts' Resp. at 13.  The parties could use
charts or other demonstratives to allow the trier of fact to keep
track of which Franchisees allege the merger caused a _de facto_

termination.  Alternatively, the Court could sever trial of different claims and/or parties to avoid any of the confusion that Cottman asserts will result from allowing the proposed amendment.

Unlike in <u>Flynn</u>, the Franchisees' proposed amendments would not radically alter the scope and nature of this case, and the proposed amendments bear more than a tangential relationship to the original action.  <u>C.f.</u> <u>id.</u> at *4 (citing <u>Mississippi Ass'n of Cooperatives v. Farmers Home Administration</u>, 139 F.R.D. 542, 544 (D. D.C. 1991).  Furthermore, trial is not imminent and discovery has yet to begin.  The Franchisees' proposed allegations have not been interposed to delay the litigation and they are related to the existing claims as they arise out of the franchise relationship and contractual duties of the parties. <u>C.f.</u> <u>Jenn-Air Prod. Co. v. Penn Ventilator, Inc.</u>, 283 F. Supp. 591, 593-94 (E.D. Pa. 1968) (allowing plaintiffs to add additional claims against defendants in similar circumstances, even though the claims were unrelated to original complaint).

Accordingly, the Court will grant the Franchisees leave to add allegations to their complaint concerning the AAMCO-Cottman merger.


D.    <u>Addition of John Tonneson as Plaintiff-Franchisor</u>

The Franchisees also seek to add nine new franchisees

23

as plaintiffs to their complaint.  Cottman only opposes adding

one of the nine: a former franshisee named John Tonneson.

Cottman submits that Tonneson signed a settlement agreement with

Cottman, dated April 26, 2005, whereby Tonneson released Cottman

from any and all claims, including specifically any claims

arising out of the franchise agreement that he had signed.  The

Franshisors, on the other hand, dispute the validity of the

settlement, arguing that Tonneson signed the release as the

result of economic duress.

     Now is not the time to raise or decide the validity of

a prior settlement.  The facts necessary to establish a valid

settlement must come from matters outside of the complaint.

Thus, the affirmative defense of a prior settlement must be

raised in responsive pleadings, not in pre-answer motions.

Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 657 (3d Cir.

2003) (upholding denial of defendant's motion to dismiss suit on

the ground that an earlier settlement agreement barred the suit,

because such an affirmative defense could not be resolved

"without further development of the record").  Indeed, Cottman

found it necessary to submit, in support of their claim, a copy

of the settlement agreement and an affidavit describing the

circumstances in which the parties entered it.  Id.

     Accordingly, the Court will allow all nine new

franchisees, including Tonneson, to be added as parties.

24

E.    Addition of Bankruptcy Trustees as Parties

Finally, the Franchisees seek to add, at a future date, six trustees of the bankruptcy estates of certain former Cottman franchisees when those trustees have received court approval to participate in this litigation.  Each trustee has filed petitions seeking approval to retain special counsel and participate in the lawsuit, but none has yet to receive such court approval. Cottman resists the addition of the bankruptcy trustees as contravening the parties' Rule 26(f) Report, which stipulated that the partes would move to join other parties by December 15, 2006 (No. 06-02681, doc. 49).  Cottman does not point to any prejudice it would suffer from this amendment other than having to defend itself against additional claimants.

The parties raise an issue that is not yet ripe.  When the trustees have obtained authorization to join as parties in this litigation, the Franchisees may at that time move to add them to their complaint.  Until then, the issue of whether the six trustees should be added is not ripe for decision.

Accordingly, the Court will deny without prejudice the Franchisees request for leave to add as parties to their complaint the bankruptcy trustees of former Cottman franchisees who have not yet obtained approval to participate in this lawsuit.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COTTMAN TRANSMISSION          :     CIVIL ACTION
SYSTEMS, LLC, ET AL.          :     NO. 05-6369
                              :
     v.                       :
                              :
DALE KERSHNER, ET AL.         :
                              :

**O R D E R**

**AND NOW**, this **22nd** day of **June, 2007,** for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that the Franchisees' Second Motion for Leave to File a Second Amended Complaint (doc. no. 62) is **GRANTED in part** and **DENIED in part.** The Franchisees are **GRANTED** leave to add to their complaint: the proposed claims under the franchise disclosure statutes in California (Count 3), Wisconsin (Count 28) and New York (Count 39); the factual allegations related to the merger between Cottman Transmission and AAMCO Transmissions; and the nine additional franchisees as Franchisee-parties. The Franchisees are **DENIED** leave to amend their complaint to include: the proposed claims under the consumer protection statutes of Arizona (Counts 1-2), Delaware (Counts 6-7), Florida (Counts 9-10), Massachusetts (Count 11-12), Nevada (Counts 14-15), New Hampshire (Counts 16-17), North Carolina (Counts 18-19), Ohio (Count 20), Oklahoma (Counts 22-23), Texas (Counts 24-25), Utah (Counts 26-27), and New Jersey (Counts 37-38); and the proposed

26

claims under the California Unfair Competition Act (Counts 4-5) or the Missouri Franchise Law (Count 13).   Finally, the Franchisees are **DENIED, without prejudice,** leave to add the six trustees of the bankruptcy estates of certain former Cottman franchisees as Franchisee-parties in this case.

**AND IT IS SO ORDERED.**

S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**