IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COTTMAN TRANSMISSION
SYSTEMS, LLC, et al.

    v.

DALE KERSHNER, et al.

:   CIVIL ACTION
:   No. 05-6369
:
:
:
:

**FILED**

JUL 1 8 2007

MICHAEL E. KUNZ, Clerk
By_____ Dep Clerk

## SECOND AMENDED COMPLAINT

The above-named Plaintiffs ("Plaintiffs"), by their attorneys, Dady & Garner, P.A., for their Complaint against Defendants Cottman Transmission Systems, LLC ("Cottman"), Ross Advertising, Inc. ("Ross"), and Todd. P. Leff ("Leff") (collectively "Defendants"), allege as follows:

### NATURE OF ACTION

This is an action in which Plaintiffs, current and former franchisees of the Cottman Transmission Franchise System ("Cottman System"), seek to recover losses they have sustained as a result of Defendants' violations of their statutory and common law duties. Plaintiffs seek to rescind their franchise agreements, obtain compensatory damages, an accounting of payments made by Plaintiffs to Defendants for advertising fees, the disgorgement of payments made to Defendants for advertising fees, and attorneys' fees, for Defendants' intentional and negligent fraud, breaches of contract and fiduciary duty, and violations of state franchise statutes, consumer unfair trade practices statutes, and the federal RICO Statute.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. § 1331 because this Court has original jurisdiction over Counts Thirty-Two through Thirty-Five (violations of the federal RICO Statute and Robinson Patman Act), and because this Court has supplemental jurisdiction over the remaining Counts pursuant to 28 U.S.C. § 1367.

2.      Venue in this District is proper under 28 U.S.C. § 1391 because a substantial number of the acts and transactions forming the basis of the Complaint took place within this District.

3.      Defendants are subject to jurisdiction in this District because they are residents of this District, engaged in the wrongful acts alleged in this Complaint within this District, causing injury within this District; because they contracted to provide goods or services in this District; and/or because they offered or sold, or participated in the offer or sale of franchises within this District.

## PARTIES

4.      Plaintiffs are current and former franchisees of the Cottman System who signed franchise agreements with Cottman (or its predecessor). The name and address of each Plaintiff is set forth on Exhibit 1 hereto and incorporated herein by reference.

5.      Cottman is a Delaware limited liability company that was formed in July 2000, and its principal place of business is Horsham, Pennsylvania. Cottman is the franchisor for every Plaintiff. In addition to being the franchisor of the Cottman System, Cottman is affiliated with Ross Advertising, Inc. ("Ross"), a Pennsylvania corporation,

which is an advertising agency. Cottman is also affiliated with Cottman Communications, Inc. ("Cottman Communications"), an entity that owns the telephone numbers and listings of Cottman's franchisees.

6. Todd P. Leff is an individual, and, upon information and belief, a resident of the State of Pennsylvania. Leff is both President and Chief Executive Officer of Cottman, positions which he has held, upon information and belief, with Cottman or its predecessor since 1998. As President and Chief Executive Officer of Cottman, Leff has direct control of Cottman and has materially aided in the pre-signing representations made to Plaintiffs. In March 2006, Leff merged Cottman with AAMCO Transmissions. Since the merger, Leff has held the position of President and Chief Executive Officer of AAMCO. Thus, he simultaneously serves as President and CEO of both Cottman and AAMCO.

## FACTS

## AUTOMOTIVE TRANSMISSION REPAIR

7. Since the 1960s, Cottman (or a predecessor in interest) has been engaged in the sale of franchises to operate Cottman Transmission Centers, which are businesses that specialize in the repair of automotive transmissions.

8. An automotive transmission is the single most complex "part" in today's automobiles. A modern automatic transmission contains mechanical systems, hydraulic systems, electrical systems, and computer controls, all within one single component.

9. It is, therefore, not surprising that transmissions are one of the most expensive components to repair on modern automobiles – an overhaul of a transmission, *i.e.*, repairs so extensive that it cannot be fixed by adjustment or by

3

replacement of accessible parts, can cost several thousand dollars.

10.    A transmission overhaul can be done in one of two ways, both of which achieve the same result. The first type of transmission overhaul is a "rebuild," which involves the complete disassembly of the transmission, the inspection of all internal parts, the replacement of the worn or damaged parts, reassembly and then reinstallation on the vehicle. Rebuilds are performed at a shop by a highly-skilled transmission technician who must know how to rebuild transmissions for a variety of manufacturers' and vehicles' specifications (a "Transmission Rebuilder").

11.    The second way to overhaul a transmission is to replace the old transmission with a transmission that has already been rebuilt by somebody else, at a different location than the transmission repair shop. In this type of a repair, the replacement transmission is known as a "remanufactured" transmission.

12.    For transmission repair shops, including those in the Cottman System, rebuilds are the preferred choice. While the retail costs of the two types of overhauls are comparable, the profit margins for rebuilds are much higher. This is because the work of a transmission repair shop is based on the hours of work of the Transmission Rebuilder. Without an experienced, qualified Transmission Rebuilder, a transmission repair business is severely handicapped, and can only use remanufactured transmissions.

## THE COTTMAN SYSTEM

13.    Before selling a franchise, franchisors such as Cottman are required by both federal and many states' laws to deliver a Uniform Franchise Offering Circular to prospective franchisees. A UFOC is required to contain truthful information about a

4

franchise that can be relied upon by a prospective franchisee in making a decision to purchase a franchise. Exhibit 2 is a September 30, 2002 UFOC; Exhibit 2 is representative of the UFOC's that Cottman produced and provided to the other Plaintiffs.

## COTTMAN'S REPRESENTATIONS TO PLAINTIFFS

14.    Plaintiffs are all current or former franchisees of the Cottman System who signed, either individually or through a business entity, a franchise agreement with Cottman. Prior to signing their franchise agreements, Cottman was required (by federal and some states' laws) to provide each prospective franchisee a UFOC, which made certain required disclosures about the Cottman System. The information contained in Cottman's UFOC was required, under both federal and state law, including the UFOC Guidelines, to be accurate, complete, truthful, and not misleading, so that prospective franchisees could rely upon it when deciding to purchase a franchise. In addition to the representations made in the UFOC, Cottman also made other representations about the Cottman System to convince Plaintiffs to sign their franchise agreements. Leff had direct control of Cottman and/or materially aided in the pre-signing representations made to Plaintiffs. Cottman's pre-signing representations to Plaintiffs included the following:

  i.    That Cottman System franchisees do not need automotive experience to succeed (see, e.g., Exhibit 5, p.1);

  ii.   That Cottman System franchisees could expect to "break even," i.e., to have neutral or positive cash flows, within two to three months after opening.

  iii.  That the average sales for Cottman System franchisees were over $500,000 (Exhibit 2, pp. 36, 129-134);

5

iv.    That the average profit realized by Cottman System franchisees was over $100,000 (Exhibit 2, pp. 36, 129-134);

v.     That a minimal number of Cottman System franchisees had closed their franchised stores in the previous years (see, e.g., Exhibit 2, pp. 37-38);

vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets (Exhibit 2, p. 30);

vii.   That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media (Exhibit 2, p. 30);

viii.  That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center."  (see, e.g., Exhibit 3, ¶ 9(c); Exhibit 5, p.2);

ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance (see, e.g., Exhibit 3, ¶ 5);

x.     That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians (see, e.g., Exhibit 3, ¶ 5; Exhibit 5);

xi.    That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff." (see, e.g., Exhibit 4, p.1); and

xii.   That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.  That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks" and the Cottman System. (Exhibit 2, p. 28; Exhibit 3, ¶ 5.i);

xiv.   That Cottman would only terminate a franchisee's franchise agreement for defaults in the franchisee's performance and after providing that

6

franchisee with notice and an opportunity to cure (Exhibit 3, ¶ 19.a.v); and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores (see, e.g., Exhibit 4, p.1).

## PLAINTIFFS' RELIANCE

15. In reliance upon the representations made by Cottman, the Plaintiffs, either individually or through a business entity, each signed a franchise agreement with Cottman and paid Cottman an initial franchise fee. Plaintiffs also spent additional amounts to outfit and open their Cottman System stores, many investing over $200,000. Much of this initial investment was paid to Cottman to purchase equipment and supplies (Exhibit 2, Item 7, p.16-23).

16. Plaintiffs also agreed to pay Cottman a continuing franchise fee of 7.5% of gross revenues and a weekly advertising fee of up to $730 a week. (Exhibit 2, Franchise Agreement, ¶¶ 8-9).

## THE FALSITY OF COTTMAN'S REPRESENTATIONS

17. After becoming Cottman System franchisees and opening their Cottman System stores, Plaintiffs discovered the truth about many of the representations made by Cottman. In particular:

i. Those Plaintiffs without any automotive experience discovered that they were at a distinct disadvantage – they were unable to develop a successful business without knowledge of the details of the transmission repair business, were unable to locate skilled Transmission Rebuilders that were necessary to make a profit, and were unable to rebuild the transmissions themselves;

ii. Plaintiffs have now found that their Cottman System stores did not "break even" after two to three months – most Plaintiffs never broke even after many months of operating their stores;

7

iii.   Plaintiffs have discovered that the earnings claims provided by Cottman, *i.e.*, that Cottman System franchisees averaged over $500,000 a year, were inaccurate and misleading; the actual average of all franchisees' annual sales and income was much lower;

iv.   Plaintiffs have discovered that Cottman's claims that Cottman System franchisees averaged profits of over $100,000 a year was misleading – the amount of profits was dependent upon hiring an experienced, skilled Transmission Rebuilder, and that, without a skilled Transmission Rebuilder, a franchisee was forced to use remanufactured transmissions which made achieving those levels of profits impossible. Moreover, the expenses listed were inaccurate and did not reflect what Plaintiffs actually experienced, and Cottman was unwilling or unable to assist Plaintiffs in achieving better results;

v.   Plaintiffs have discovered that Cottman's representations of the number of franchisees who closed their Cottman System stores were misleading. Cottman has established a pattern of refusing to allow franchisees to close a failing store, using threats of legal action and other coercion to force many franchisees to continue operating until the franchisee was forced to "transfer" a franchise, to Cottman or another franchisee, for a fraction of their franchise investment;

vi.   Plaintiffs have discovered that Cottman did not provide effective local and regional advertising through Ross – Ross charged Plaintiffs' advertising accounts for advertising that was never placed, was placed erroneously, and/or charged Plaintiffs' for higher than market rates. Moreover, Cottman and Ross have consistently refused, or have been unable, to provide Plaintiffs with complete and accurate accountings of individual advertising accounts;

vii.   Plaintiffs have discovered that (1) Cottman and Ross have charged Plaintiffs more than a 10% commission on advertising placed by Ross when no commission is paid directly by the media, and that (2) Cottman and Ross have charged Plaintiffs a commission on advertising placed by Ross when a commission was been paid directly by the media;

viii.   Plaintiffs discovered that Cottman failed to provide effective pre-opening services to Plaintiffs, including the failure to provide an effective "intensive owner's training program" – the actual training program consisted of three weeks spent at Cottman's home office learning sales scripts designed to "hard-sell" transmission services to customers, with no time dedicated to learning about the technical aspects of transmission repairs at a Cottman System store;

8

ix. Cottman failed to provide "complete and total support" upon opening, including Cottman's frequent failure to provide a final week of training on-site at Plaintiffs' stores, and a failure to provide effective assistance in locating skilled Transmission Rebuilders for Plaintiffs, without which it was impossible to successfully operate as a Cottman System franchise;

x. Cottman failed to provide franchisees with a list of "top notch technical staff" qualified to work at Plaintiffs' stores;

xi. Plaintiffs have discovered that Cottman encouraged franchisees that were selling their Cottman System stores to create false receipts in order to inflate the amount of sales at the store, to induce prospective buyers to purchase;

xii. Upon information and belief, Cottman and Ross have received payments or other value from vendors of goods and services based upon purchases made by or for Cottman franchisees, to which Cottman was not contractually entitled and for which Cottman did not perform any services in connection with the receipt of payments or other value;

xiii. Upon information and belief, Cottman maximizes its profits by "churning" franchise stores, i.e., it sells franchised stores over and over at a profit, through a scheme that involves Cottman's: (1) overstating the likelihood of success of a franchise or the results achieved by previous franchisees; (2) committing numerous breaches of duties owed to franchisees that make the successful operation of a Cottman franchise extremely difficult; (3) coercing franchisees to continue to operate failing franchises long enough to sell the store and equipment back to Cottman at a significant loss for the franchisee; and (4) reselling the same franchise and equipment to a new franchisee at significant profit to Cottman;

xiv. Cottman has failed to "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks; and

xv. As a result of Cottman's parent company's decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements without cause or an opportunity to cure any defaults.

9

18. As a result of the material misrepresentations and omissions by Cottman, Plaintiffs entered into their franchise agreements upon false pretenses, and purchased and invested in franchises that did not conform to the representations that had been made to them. Plaintiffs, as a result, have suffered substantial damages because the franchises they purchased were not as represented and Plaintiffs are therefore entitled to rescind their franchise agreements with Cottman and to recover the present value of their lost investment in their Cottman System franchises, so that they are returned to the same position they would be in had they never become Cottman System franchisees. Plaintiffs are therefore prepared to tender everything of value that they received under their franchise agreements to Cottman.

## COTTMAN'S BREACHES OF CONTRACT AND OTHER DUTIES

19. During the time that Plaintiffs have been franchisees in the Cottman System, Cottman has materially breached contractual and other legal obligations to the Plaintiffs that have caused damages to them separate and distinct from the damages that they sustained as rescission damages. Cottman's material breaches of its contractual duties to Plaintiffs include the following:

> i. Cottman failed to provide an "intensive owner's training program" to Plaintiffs, and frequently failed to provide one week of on-site training to many Plaintiffs;
>
> ii. Cottman failed to provide effective assistance to Plaintiffs in locating and evaluating skilled Transmission Rebuilders for franchisees to employ;
>
> iii. Cottman failed to provide appropriate and effective advertising for the Plaintiffs' regional and local markets;
>
> iv. Cottman failed to properly credit certain Plaintiffs' accounts for warranty work that the those Plaintiffs performed;

10

v.   Cottman coerced certain Plaintiffs to sign "Management Agreements" with individuals that Cottman knew were unable to successfully operate a Cottman System store or to complete a purchase of the franchise;

vi.   Cottman unreasonably withheld its consent to sales of certain Plaintiffs' stores unless and until Plaintiffs signed a release and agreed to settle claims for disputes over audits conducted based upon the results of audits that Cottman conducted that purported to show underreporting of sales by the franchisee;

vii.   Cottman discontinued advertising in certain Plaintiff's markets when a single franchisee in that market was unable to pay Cottman its monthly advertising fee, which had the effect of discontinuing advertising for all of the other franchisees in that market, who were not in default under their franchise agreements;

viii.   Cottman failed to use best efforts to market certain Plaintiffs' Cottman System franchises under exclusive listing agreements; upon information and belief, Cottman would not inform prospective purchasers of the existence of Plaintiff-owned stores, but would sell prospective franchisees former franchisee-owned stores that Cottman had purchased;

ix.   Cottman has failed to make payments to certain Plaintiffs under contracts for the purchase of equipment by Cottman, after Cottman purchased equipment back from certain Plaintiffs when those Plaintiffs went out of business;

x.   Cottman has failed to "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks" in that Cottman has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks; and

xi.   As a result of Cottman's parent company's decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of existing Cottman System franchisees' franchise agreements without cause or an opportunity to cure any defaults.

11

20. As a result of Cottman's breaches of contract, Plaintiffs have suffered damages in an amount to be determined at trial, but which are separate and apart from the rescission damages that they have incurred investing in the franchise.

21. In addition to breaches of contractual duties, during the time that Plaintiffs have been franchisees of the Cottman System, Defendants breached fiduciary duties owed to Plaintiffs. Plaintiffs paid Cottman to purchase and place their local and regional advertising; payments to Cottman included a Grand Opening Advertising Fee for some Plaintiffs, and an Ongoing Advertising Fee (up to $730 a week) for all Plaintiffs that was to be used by Cottman to pay for advertising, for national advertising, as well as for regional and local advertising for each franchisee (Exhibit 3, ¶ 9; Exhibit 5, p. 2).

22. Ross, an affiliate of Cottman, acted as Cottman's captive advertising agency, and placed advertising on the Plaintiffs' behalf. Expenditures made on behalf of Plaintiffs were deducted from an account that was established for each.

23. Prior to placing advertising, Ross' representatives would often provide franchisees with copies of proposed advertising to allow Plaintiffs the opportunity to correct errors and provide advice and input. In addition, Plaintiffs would, at times, direct the type of advertising to be placed for that franchisee's market.

24. Cottman was an agent for Plaintiffs because:

    i. Plaintiffs authorized Cottman and Ross to act on their behalf to purchase and place advertising for Plaintiffs, including the development, purchase and placement of advertising for Plaintiffs' local and regional markets;

    ii. Cottman agreed, in exchange for payment of advertising fees by franchisees, to purchase and place advertising for Plaintiffs, including Plaintiffs' local and regional markets;

12

     iii.    Plaintiffs had the ability to control aspects of the purchase and placement of the advertising by Cottman/Ross; and

     iv.    Cottman and certain Plaintiffs entered into listing agreements whereby Cottman expressly agreed to act as that Plaintiffs' exclusive sales agent.

25.    Cottman, as the agent of the franchisees, breached its fiduciary duties in several ways, including:

     i.    Ross placed advertisements for Plaintiffs that contained significant errors;

     ii.    Ross has consistently failed to secure the best possible prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

     iii.    After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for these "accounts," and Cottman demanded additional payments from Plaintiffs for these advertising fees and threatened to suspend the Center's telephone numbers and advertising when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

     iv.    Ross frequently failed to pay for the advertising that Ross placed in local media outlets;

     v.    Cottman failed to refund the unspent amounts in Plaintiffs' account when Plaintiffs closed their Centers;

     vi.    Cottman has refused to provide Plaintiffs with accountings of their advertising "accounts," including an accounting of the amounts paid and evidence of the purchases and actual placements of advertisements on behalf of the Plaintiffs; and

     vii.    Upon information and belief, Cottman failed to represent the best interests of Plaintiffs with whom Cottman had executed a listing agreement; Cottman would not advise potential purchasers of Cottman System franchises that it had listed for sale, but instead would attempt to sell prospective franchisees those Cottman System stores that Cottman owned, which it had purchased back from failing franchisees.

26. As a result of Cottman's and Ross' breaches of fiduciary duties owed to Plaintiffs, Plaintiffs have suffered damages in an amount to be determined at trial but which are separate and apart from the rescission damages that they have incurred in investing in the franchise.

## COTTMAN'S RICO VIOLATIONS

27. In addition to the breaches of its other duties, Cottman has violated the federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 et seq. (the "RICO Statute").

28. Cottman is a corporation and is capable of holding a legal or beneficial interest in property.

29. The relationship between Cottman, Ross, and Cottman Communications constitutes an association in fact enterprise because Cottman, Ross, and Cottman Communications are separate corporate entities that are engaged in a continuous pattern of racketeering activities as follows:

   i. Cottman makes false and misleading representations to induce franchisees into purchasing Cottman System franchises, which requires franchisees to sign franchise agreements pursuant to which franchisees must pay Cottman advertising fees for advertising that is to be produced and placed by Ross;

   ii. Cottman and/or Ross establish personal advertising "accounts" for franchisees, and Ross deliberately overspends, overcharges, and/or falsely accounts for the advertising provided to each franchisee's "account";

   iii. Cottman and/or Ross conspire together to make false and misleading representations to franchisees about individual franchisees' "accounts", including providing false and misleading statements about (a) the type and amount of advertising that was provided for individual "accounts", (b) the actual costs of the advertising that was produced and purchased by Ross, (c) the amounts of advertising payments and additional payments that Cottman received from franchisees, and (d)

14

the amounts of additional payments that franchisees owed to Cottman for the "accounts;"

iv. Cottman, Cottman Communications and/or Ross conspire together to use wrongful threats of economic harm, including threats of legal action, termination of franchise agreements, cessation of telephone services held by Cottman Communications, and cessation of Ross' continued advertising support to acquire money and property from Plaintiffs.

30. This pattern of racketeering activities is accomplished through the use of

the following:

i. Cottman and/or Ross use both the mails, private couriers, and transmittals via phone line and computer to deliver false and fraudulent information relating to the Cottman System and individual advertising "accounts" to franchisees before and after franchisees have executed franchise agreements with Cottman;

ii. Cottman, Cottman Communication, and/or Ross use wrongful threats of economic harm, including threats of legal action, the termination of franchise agreements, the cessation of franchisees' telephone services, and the cessation of Ross' continued advertising support, to acquire money and property from Plaintiffs to which Cottman was not contractually entitled.

31. The enterprise consisting of Cottman, Ross, and Cottman Communications have frequently committed these activities and have, despite numerous requests from franchisees to cease such activities, refused to cease these activities; by all indications, their activities are continuing, and will continue. The activities engaged in by Cottman, Ross, and Cottman Communications have affected interstate commerce, as these activities have been directed to franchisees throughout various jurisdictions of the United States.

32. As a result of Cottman's RICO Statute violations, Plaintiffs have suffered damages in an amount to be determined at trial but which are separate and apart from the other damages that they have incurred in investing in their franchises.

15

v.     That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.   That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.  That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.     That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.    That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.   That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.  That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.   That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's,  decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

17

## COUNT ONE
## VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
## ARIZ. REV. STAT. §§ 44-1521 ET SEQ.
## PLAINTIFFS WILLIAM KAGAWA, AND 4 KAGS CORPORATION AGAINST
## DEFENDANT COTTMAN

33.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

34.     Under the terms of the applicable law of the State of Arizona, Plaintiffs William Kagawa, and 4 Kags Corporation are "persons," and the sale of a franchise is the sale of "merchandise," under the terms of the Arizona Act.

35.     Further, under the terms of the Arizona Act, it is unlawful for a Defendant such as Cottman to engage in deceptive acts or fraud, or to make misrepresentations, or to suppress or omit, any material facts with intent that others rely upon such deceptive acts, fraud, representations or omissions in connection with the sale of any merchandise.

36.     Defendant has violated the law of the State of Arizona by making the following false representations and material omissions, which an unlawful practice under the Arizona Act:

> i.      That Cottman System franchisees do not need automotive experience to succeed;
>
> ii.     That Cottman System franchisees could expect to "break even," *i.e.,* to have neutral or positive cash flows, within two to three months after opening.
>
> iii.    That the average sales for Cottman System franchisees were over $500,000;
>
> iv.     That the average profit realized by Cottman System franchisees was over $100,000;

16

xv.   That Cottman's goal was to sell franchises and then assist its
franchisees to successfully operate their Cottman System stores.

37.   Under the terms of the Act, and as a result of Defendant's unlawful
conduct, Plaintiffs William Kagawa and 4 Kags Corporation are entitled to recover their
damages.

38.   While the precise amount of each Plaintiff's damages cannot now be
determined with precision, such damages are in excess of $75,000. A more precise
amount to which each Plaintiff is entitled will be presented at a trial on the merits of this
matter.

## COUNT TWO
## VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT – ARIZ. REV. STAT. §§ 44-1521 ET SEQ. PLAINTIFFS WILLIAM KAGAWA, 4 KAGS CORPORATION AGAINST DEFENDANTS COTTMAN AND ROSS

39.   Plaintiffs reallege and incorporate by reference all of the allegations set
forth in the preceding paragraphs as though fully set forth herein.

40.   Under the terms of the applicable law of the State of Arizona, Plaintiffs
William Kagawa and 4 Kags Corporation are "persons," and the sale of a franchise is
the sale of "merchandise," under the terms of the Arizona Act.

41.   Further, under the terms of the Arizona Act, it is unlawful for Defendants
such as Cottman and Ross to engage in deceptive acts or fraud, or to make
misrepresentations, or to suppress or omit, any material facts with intent that others rely
upon such deceptive acts, fraud, representations or omissions in connection with the
sale of any merchandise.

42. By and through the following conduct, which constitute deceptive acts,

Defendants have violated the law of the State of Arizona:

> (a) Ross placed advertisements for franchisees that contained significant errors, despite repeated notices from the Plaintiffs;
>
> (b) After advising Plaintiffs that Ross was going to use its "group buying power" to achieve lower prices, Ross has consistently failed to secure lower prices for franchisees (despite representing nearly 400 franchisees in the Cottman System, franchisees were frequently able to secure lower prices themselves for advertising such as "yellow pages" telephone listings, but nonetheless were forced by Cottman to allow Ross to place the franchisees' advertising – all without any explanation of the higher prices);
>
> (c) After establishing individual "accounts" for franchisees, Ross overspent and overcharged individual franchisees' "accounts"; furthermore, Ross and Cottman demanded additional payments from franchisees over and above the advertising fees due under franchise agreements, and if the franchisees did not comply, they were threatened with suspension, and often were suspended, from all future advertising unless such payments were made;
>
> (d) Ross and/or Cottman failed to refund or utilize the unspent amounts in franchisee's accounts when a franchisee closed or transferred his franchise; and
>
> (e) Both Cottman and Ross have refused to provide franchisees accountings of individual accounts, including an accounting of the amounts paid by each franchisee, and evidence of the purchases and actual placements of advertisements on behalf of each franchisee's accounts.

43. Under the terms of the Act, and as a result of Defendants' unlawful

conduct, Plaintiffs are entitled to recover their damages.

44. While the precise amount of each Plaintiffs' damages cannot now be

determined with precision, such damages are in excess of $75,000. A more precise

amount to which each Plaintiff is entitled will be presented at a trial on the merits of this

matter.

## COUNT THREE
## VIOLATION OF THE CALIFORNIA FRANCHISE INVESTMENT LAW –
### CAL. CORP. CODE §§ 31000 ET SEQ.
### AGAINST DEFENDANTS COTTMAN AND LEFF

45.     Plaintiffs reallege and incorporate by reference all of the allegations set

forth in the preceding paragraphs as though fully set forth herein.

46.     Under the terms of the applicable law of the State of California, Plaintiffs

Marcos Gonzalez, Marcos & Patricia Gonzalez Enterprises, Inc., William Setiawan,

Verned Corporation, John R. Bauguss, and Transmission Systems, Inc. are

franchisees, and Defendant Cottman is a franchisor, within the meaning of Cal. Bus. &

Prof. Code § 31000 et seq.

47.     Further, under the terms of the California Act, it is unlawful for a franchisor

to engage in any of the following conduct:

> (a) Make an untrue statement of material facts in any document filed with
> the State of California, or to willfully omit any material fact from any
> such document;

> (b) Make an untrue statement of material facts in any oral statement or
> document not required to be filed with the State of California, or to omit
> any material fact from any such document or oral representation, when
> failure to do so makes the statements that were made misleading
> under the circumstances; or

> (c) Make an untrue statement of material facts in any document, or to
> willfully omit any material fact from any such document, that are
> required by the State of California to be disclosed to the franchisee.

48.     Cottman has violated the law of the State of California by making the

following false representations and material omissions:

> i.      That Cottman System franchisees do not need automotive experience
> to succeed;

> ii.     That Cottman System franchisees could expect to "break even," *i.e.*, to
> have neutral or positive cash flows, within two to three months after
> opening.

iii.   That the average sales for Cottman System franchisees were over $500,000;

iv.   That the average profit realized by Cottman System franchisees was over $100,000;

v.   That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.   That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.   That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.   That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.   That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.   That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.   That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.   That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.   That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

21

xiv.   That Cottman would not terminate franchisees' franchise agreements
       without cause or an opportunity to cure any defects, when, in fact, as a
       result of Cottman's decision to merge the Cottman System into
       AAMCO, and therefore out of existence, Cottman has effected a *de
       facto* termination of then-existing Cottman System franchisees'
       franchise agreements; and

xv.    That Cottman's goal was to sell franchises and then assist its
       franchisees to successfully operate their Cottman System stores.

49.    Further, under the terms of the law of California, Defendant Todd P. Leff is

jointly and severally liable as a "control person" of Defendant Cottman under Cal. Corp.

Code § 31302.

50.    Under the terms of the Act, and as a result of Cottman's unlawful conduct,

Plaintiffs Marcos Gonzalez, Marcos & Patricia Gonzalez Enterprises, Inc., William

Setiawan, Verned Corporation, John R. Bauguss, and Transmission Systems, Inc. are

entitled to rescind their contracts, recover damages, as well as costs and attorneys'

fees.

51.    While the precise amount of each Plaintiff's damages cannot now be

determined with precision, such damages are in excess of $75,000. A more precise

amount to which each Plaintiff is entitled will be presented at a trial on the merits of this

matter.

## COUNT FOUR
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION ACT –
## CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.
## AGAINST DEFENDANT COTTMAN

52.     Plaintiffs reallege and incorporate by reference all of the allegations set

forth in the preceding paragraphs as though fully set forth herein.

53.     Under the terms of the applicable law of the State of California, Plaintiffs

Marcos Gonzalez, Marcos & Patricia Gonzalez Enterprises, Inc., William Setiawan,

Verned Corporation, John R. Bauguss, and Transmission Systems, Inc. are "persons"

as defined by the statute.

54.     Further, under the terms of the California Act, it is unlawful for a Defendant

such as Cottman to engage in any unlawful, unfair, or fraudulent business act or

practice.

55.     Cottman has violated the law of the State of California by making the

following false representations and material omissions:

      i.    That Cottman System franchisees do not need automotive experience
           to succeed;

     ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to
           have neutral or positive cash flows, within two to three months after
           opening.

    iii.    That the average sales for Cottman System franchisees were over
           $500,000;

    iv.    That the average profit realized by Cottman System franchisees was
           over $100,000;

     v.    That only a minimal number of Cottman System franchisees had
           closed their franchised stores in the previous years;

23

vi.     That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.   That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.     That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.      That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.     That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.    That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.   That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.    That as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements without cause or an opportunity to cure any defaults; and

xv.     That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

56. Under the terms of the Act, and as a result of Defendant's unlawful conduct, Plaintiffs Marcos Gonzalez, Marcos & Patricia Gonzalez Enterprises, Inc., William Setiawan, Verned Corporation, John R. Bauguss, and Transmission Systems, Inc. are entitled to recover damages.

57. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT FIVE
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION ACT – CAL. BUS. & PROF. CODE §§ 17200 ET SEQ. AGAINST DEFENDANTS COTTMAN AND ROSS

58. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

59. Under the terms of the applicable law of the State of California, Plaintiffs Marcos Gonzalez, Marcos & Patricia Gonzalez Enterprises, Inc., William Setiawan, Verned Corporation, John R. Bauguss, and Transmission Systems, Inc. are "persons" as defined by the statute.

60. Further, under the terms of the California Act, it is unlawful for Defendants such as Cottman and Ross to engage in any unlawful, unfair, or fraudulent business act or practice.

61. By and through the following conduct, Cottman and/or Ross have violated the law of the State of California:

> i. Ross placed advertisements for franchisees that contained significant errors;

25

ii.     Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

iii.    After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv.     Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v.      Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

62.     Under the terms of the Act, and as a result of Cottman and/or Ross' unlawful conduct, Plaintiffs Marcos Gonzalez, Marcos & Patricia Gonzalez Enterprises, Inc., William Setiawan, Verned Corporation, John R. Bauguss, and Transmission Systems, Inc. are entitled to recover damages.

63.     While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT SIX
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT –
## 6 DEL. CODE ANN. §§ 2513 ET SEQ.
## PLAINTIFFS FRANK CAVONE AND CAVONE AUTOMOTIVE, LLC
## AGAINST DEFENDANT COTTMAN

64.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

65.     Under the terms of the applicable law of the State of Delaware, Plaintiffs Frank Cavone and Cavone Automotive, LLC are "persons" under the terms of the Delaware Consumer Fraud Act.

66.     Further, under the terms of the Delaware Act, it is unlawful for a Defendant such as Cottman to utilize any deception fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission of material fact in connection with the sale of any merchandise.

67.     Cottman has violated the law of the State of Delaware by making the following false representations and material omissions in connection with the sale of Cottman System franchises:

> i.      That Cottman System franchisees do not need automotive experience to succeed;
>
> ii.     That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.
>
> iii.    That the average sales for Cottman System franchisees were over $500,000;
>
> iv.     That the average profit realized by Cottman System franchisees was over $100,000;

27

v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.   That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.  That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.   That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.    That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.   That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.  That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii. That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.  That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de*

28

*facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

68. Under the terms of the Act, and as a result of Defendant's unlawful conduct, Plaintiffs Frank Cavone and Cavone Automotive, LLC are entitled to recover damages, attorneys' fees, and costs.

69. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT SEVEN
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT –
## 6 DEL. CODE ANN. §§ 2513 ET SEQ.
## PLAINTIFFS FRANK CAVONE AND CAVONE AUTOMOTIVE, LLC
## AGAINST DEFENDANTS COTTMAN AND ROSS

70. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

71. Under the terms of the applicable law of the State of Connecticut, Plaintiffs Frank Cavone and Cavone Automotive, LLC are "persons" under the terms of the Delaware Consumer Fraud Act.

72. Further, under the terms of the Delaware Act, it is unlawful for Defendants such as Cottman and Ross to utilize any deception fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact with the intent that others rely upon the concealment, suppression, or omission of material fact in connection with the sale of any merchandise.

73. By and through the following conduct, Defendants have violated the law of

the State of Delaware:

> i. Ross placed advertisements for Plaintiffs that contained significant errors;
>
> ii. Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);
>
> iii. After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;
>
> iv. Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and
>
> v. Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

74. Under the terms of the Act, and as a result of Defendants' unlawful

conduct, Plaintiffs Frank Cavone and Cavone Automotive, LLC are entitled to recover

damages, attorneys' fees, and costs.

75. While the precise amount of each Plaintiff's damages cannot now be

determined with precision, such damages are in excess of $75,000. A more precise

amount to which each Plaintiff is entitled will be presented at a trial on the merits of this

matter.

30

## COUNT EIGHT
## VIOLATION OF THE FLORIDA FRANCHISE MISREPRESENTATION ACT –
## FLA. STAT. § 817.416
## PLAINTIFFS JEROME HUTCHESON, BRIAN E. GEORGE AND BGFP, INC.
## AGAINST DEFENDANT COTTMAN

76.     Plaintiffs reallege and incorporate by reference all of the allegations set

forth in the preceding paragraphs as though fully set forth herein.

77.     Under the terms of the applicable law of the State of Florida, Plaintiffs

Jerome Hutcheson, Brian E. George and BGFP, Inc. are franchisees, and Defendant

Cottman is a franchisor, within the meaning of Fla. Stat. § 817.416 et seq.

78.     Further, under the terms of the Florida Act, it is unlawful for a franchisor to

engage in any of the following conduct:

> (a) To intentionally misrepresent the prospects or chances for success of
> a proposed or existing franchise or distributorship;
>
> (b) To intentionally misrepresent, by failure to disclose or otherwise, the
> known required total investment for such franchise or distributorship; or
>
> (c) To intentionally misrepresent or fail to disclose efforts to sell or
> establish more franchises or distributorships than is reasonable to
> expect the market or market area for the particular franchise or
> distributorship to sustain.

79.     Cottman has violated the law of the State of Florida by making the

following false representations and material omissions:

> i.      That Cottman System franchisees do not need automotive experience
> to succeed;
>
> ii.     That Cottman System franchisees could expect to "break even," *i.e.*, to
> have neutral or positive cash flows, within two to three months after
> opening.
>
> iii.    That the average sales for Cottman System franchisees were over
> $500,000;

iv.   That the average profit realized by Cottman System franchisees was over $100,000;

v.   That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.   That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.   That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.   That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.   That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.   That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.   That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.   That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.   That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.   That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a

32

result of Cottman's decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

80. Under the terms of the Act, and as a result of Cottman's unlawful conduct, Plaintiffs Jerome Hutcheson, Brian E. George and BGFP, Inc. are entitled to recover damages, as well as costs and attorneys' fees.

81. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT NINE
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT – FLA. ST. ANN. §§ 501.201 ET SEQ. PLAINTIFFS JEROME HUTCHESON, BRIAN E. GEORGE AND BGFP, INC. AGAINST DEFENDANT COTTMAN

82. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

83. Under the terms of the applicable law of the State of Florida, Plaintiffs Jerome Hutcheson, Brian E. George and BGFP, Inc. are "consumers" of goods and services.

84. Further, under the terms of the Florida Act, it is unlawful for a Defendant such as Cottman to engage in any unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

85.     Cottman has violated the law of the State of Florida by making the

following false representations and material omissions:

     i.     That Cottman System franchisees do not need automotive experience to succeed;

     ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

     iii.   That the average sales for Cottman System franchisees were over $500,000;

     iv.   That the average profit realized by Cottman System franchisees was over $100,000;

     v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

     vi.   That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

     vii.   That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

     viii.  That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

     ix.   That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

     x.    That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

     xi.   That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

34

xii.     That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.    That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.    That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv.     That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

86.     Defendant Cottman, by its decision to merge the Cottman System into AAMCO, has engaged in unfair competition in violation of the Act by, among other things:

i.      Failing to "continue to develop, promote, and protect the goodwill and reputation associated with the Cottman names and marks and the Cottman System";

ii.     Encouraging Cottman franchisees to convert to AAMCO, significantly diminishing the number of existing Cottman franchises;

iii.    Refusing to permit franchisees participating in this litigation to convert to the AAMCO brand;

iv.     Ceasing to offer new Cottman franchises or to grow the Cottman System; and

v.      Favoring AAMCO over Cottman and permitting AAMCO stores to compete with existing Cottman franchises in areas in which Franchisees were protected from competition by their franchise agreements.

87. As a result of these unfair acts, Franchisees still in business as of the date

of the merger transaction have been harmed in the following ways, among others:

      i. The merger has placed Franchisees at a competitive disadvantage. For example, since the AAMCO merger, there has been a substantial decrease in the number of Cottman centers and a correlative increase in the number of AAMCO centers, as Cottman franchisees not participating in the litigation are encouraged to switch to AAMCO. Prior to the merger, there were over 400 Cottman centers available to provide national warranty service. This gave Cottman franchisees a strong marketing advantage. Now, as a result of the merger, there has been a very significant decrease in the number of Cottman centers, placing franchisees who did not or could not convert to AAMCO at a competitive disadvantage.

     ii. The significant diminution in the number of Cottman centers resulting from the AAMCO merger has diluted the value of the Cottman brand.

    iii. The loss of business resulting from the negative effects of the merger has forced some Franchisees to close their doors, effecting a *de facto* termination of their franchise agreements.

88. Under the terms of the Act, and as a result of Defendant's unlawful

conduct, Plaintiffs Jerome Hutcheson, Brian E. George and BGFP, Inc. are entitled to

recover damages, as well as attorneys' fees and costs.

89. While the precise amount of each Plaintiff's damages cannot now be

determined with precision, such damages are in excess of $75,000. A more precise

amount to which each Plaintiff is entitled will be presented at a trial on the merits of this

matter.

36

## COUNT TEN
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### – FLA. ST. ANN. §§ 501.201 ET SEQ.
## PLAINTIFFS JEROME HUTCHESON, BRIAN E. GEORGE AND BGFP, INC.
## AGAINST DEFENDANTS COTTMAN AND ROSS

90. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

91. Under the terms of the applicable law of the State of Florida, Plaintiffs Jerome Hutcheson, Brian E. George and BGFP, Inc. are "consumers" of goods and services.

92. Further, under the terms of the Florida Act, it is unlawful for Defendants such as Cottman and Ross to engage in any unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

93. By and through the following conduct, Defendants have violated the law of the State of Florida:

> i. Ross placed advertisements for Plaintiffs that contained significant errors;
>
> ii. Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);
>
> iii. After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's

37

telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv.  Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v.   Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

94.   Under the terms of the Act, and as a result of Defendants' unlawful conduct, Plaintiffs Jerome Hutcheson, Brian E. George and BGFP, Inc. are entitled to recover damages, as well as attorneys' fees and costs.

95.   While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

**COUNT ELEVEN**
**VIOLATION OF THE REGULATION OF BUSINESS PRACTICES FOR CONSUMER PROTECTION (MASSACHUSETTS) – MASS. GEN. LAWS CH. 93A, §§ 1 ET SEQ. PLAINTIFFS JOHN HUNTER, HUNTER DEV. GROUP, INC., ERIC KAROFSKY MSK ENTERPRISES, INC., TERRY KENNEDY, TERRELYN, LLC, RICK SHAYS, ALAN TRAUSCHKE, AND TOPLINE TRANSMISSION, INC. AGAINST DEFENDANT COTTMAN**

96.   Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

97.   Under the terms of the applicable law of the State of Massachusetts, Plaintiffs John Hunter, Hunter Dev. Group, Inc., Eric Karofsky, MSK Enterprises, Inc., Terry Kennedy, Terrelyn, LLC, Rick Shays, Alan Trauschke, and Topline Transmission, Inc. are "persons" under the terms of the Massachusetts Act.

98.     Further, under the terms of the Massachusetts Act, it is unlawful for a Defendant such as Cottman to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

99.     Defendant has violated the law of the State of Massachusetts by making the following false representations and material omissions:

     i.    That Cottman System franchisees do not need automotive experience to succeed;

    ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

    iii.    That the average sales for Cottman System franchisees were over $500,000;

    iv.    That the average profit realized by Cottman System franchisees was over $100,000;

    v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

    vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

    vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

    viii.    That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

    ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

    x.    That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training

program, and assistance in locating and providing skilled transmission repair technicians;

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii. That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii. That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv. That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's,  decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

100.   Defendant Cottman, by its decision to merge the Cottman System into AAMCO, has engaged in unfair competition in violation of the Act by, among other things:

i.   Failing to "continue to develop, promote, and protect the goodwill and reputation associated with the Cottman names and marks and the Cottman System";

ii. Encouraging Cottman franchisees to convert to AAMCO, significantly diminishing the number of existing Cottman franchises;

iii. Refusing to permit franchisees participating in this litigation to convert to the AAMCO brand;

iv. Ceasing to offer new Cottman franchises or to grow the Cottman System; and

v.  Favoring AAMCO over Cottman and permitting AAMCO stores to compete with existing Cottman franchises in areas in which Franchisees were protected from competition by their franchise agreements.

101.  As a result of these unfair acts, Franchisees still in business as of the date of the merger transaction have been harmed in the following ways, among others:

i.  The merger has placed Franchisees at a competitive disadvantage. For example, since the AAMCO merger, there has been a substantial decrease in the number of Cottman centers and a correlative increase in the number of AAMCO centers, as Cottman franchisees not participating in the litigation are encouraged to switch to AAMCO. Prior to the merger, there were over 400 Cottman centers available to provide national warranty service. This gave Cottman franchisees a strong marketing advantage. Now, as a result of the merger, there has been a very significant decrease in the number of Cottman centers, placing franchisees who did not or could not convert to AAMCO at a competitive disadvantage.

ii.  The significant diminution in the number of Cottman centers resulting from the AAMCO merger has diluted the value of the Cottman brand.

iii.  The loss of business resulting from the negative effects of the merger has forced some Franchisees to close their doors, effecting a *de facto* termination of their franchise agreements.

102.  Under the terms of the Act, and as a result of Defendant's unlawful conduct, Plaintiffs John Hunter, Hunter Dev. Group, Inc., Eric Karofsky, MSK Enterprises, Inc., Terry Kennedy, Terrelyn, LLC, Rick Shays, Alan Trauschke, and Topline Transmission, Inc. are entitled to recover damages, including attorneys' fees and costs.

103.  While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWELVE
### VIOLATION OF THE REGULATION OF BUSINESS PRACTICES FOR CONSUMER PROTECTION (MASSACHUSETTS) – MASS. GEN. LAWS CH. 93A, §§ 1 ET SEQ. PLAINTIFFS JOHN HUNTER, HUNTER DEV. GROUP, INC., ERIC KAROFSKY MSK ENTERPRISES, INC., TERRY KENNEDY, TERRELYN, LLC, RICK SHAYS, ALAN TRAUSCHKE, AND TOPLINE TRANSMISSION, INC. AGAINST DEFENDANTS COTTMAN AND ROSS

104. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

105. Under the terms of the applicable law of the State of Massachusetts, Plaintiffs John Hunter, Hunter Dev. Group, Inc., Eric Karofsky, MSK Enterprises, Inc., Terry Kennedy, Terrelyn, LLC, Rick Shays, Alan Trauschke, and Topline Transmission, Inc. are "persons" under the terms of the Massachusetts Act.

106. Further, under the terms of the Massachusetts Act, it is unlawful for Defendants such as Cottman and Ross to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

107. By and through the following conduct, Defendants have violated the law of the State of Massachusetts:

   i. Ross placed advertisements for Plaintiffs that contained significant errors;

   ii. Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

   iii. After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's

42

telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv. Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v. Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

108. Under the terms of the Act, and as a result of Defendants' unlawful conduct, Plaintiffs John Hunter, Hunter Dev. Group, Inc., Eric Karofsky, MSK Enterprises, Inc., Terry Kennedy, Terrelyn, LLC, Rick Shays, Alan Trauschke, and Topline Transmission, Inc. are entitled to recover damages, including attorneys' fees and costs.

109. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT THIRTEEN
## VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT –
## NEV. REV. STAT. §§ 598.0915 ET SEQ.
## PLAINTIFF LEO PETRINI AGAINST DEFENDANT COTTMAN

110. Under the terms of the applicable law of the State of Nevada, Plaintiff Leo Petrini is entitled to the protections of the Nevada Deceptive Trade Practices Act.

111. Further, under the terms of the Nevada Act, a person engages in a "deceptive trade practice" if, in the course of his business or occupation, he:

> a. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods or services for sale or lease or a false representation as to the

43

sponsorship, approval, status, affiliation, or connection of a person therewith;

b. Represents that goods or services for sale or lease are of a particular standard, quality, or grade, or that such goods are of a particular style or model, if he knows or should know that they are of another standard, quality, grade, style, or model;

c. Advertises under the guise of obtaining sales personnel when the purpose is to first sell or lease goods or services to the sales personnel applicant; or

d. Knowingly makes any other false representations in a transaction.

112.  Cottman has violated the law of the State of Nevada by making the

following false representations and material omissions:

i.      That Cottman System franchisees do not need automotive experience to succeed;

ii.     That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

iii.    That the average sales for Cottman System franchisees were over $500,000;

iv.     That the average profit realized by Cottman System franchisees was over $100,000;

v.      That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.     That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.   That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

44

ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.     That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.    That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.   That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.  That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.   That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv.    That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

113.   Under the terms of the Nevada Act, and as a result of Defendant's unlawful conduct, Plaintiff Leo Petrini is entitled to recover damages, as well as attorneys' fees and costs.

114.   While the precise amount of Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise

amount to which Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT FOURTEEN
## VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT – NEV. REV. STAT. §§ 598.0915 ET SEQ.
## PLAINTIFF LEO PETRINI AGAINST DEFENDANTS COTTMAN AND ROSS

115.   Plaintiffs reallege and incorporate by reference all of the allegations set

forth in the preceding paragraphs as though fully set forth herein.

116.   Under the terms of the applicable law of the State of Nevada, Plaintiff Leo

Petrini is entitled to the protections of the Nevada Deceptive Trade Practices Act.

117.   Further, under the terms of the Nevada Act, a person engages in a

"deceptive trade practice" if, in the course of his business or occupation, he:

> (a) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;
>
> (b) Represents that goods or services for sale or lease are of a particular standard, quality, or grade, or that such goods are of a particular style or model, if he knows or should know that they are of another standard, quality, grade, style, or model;
>
> (c) Advertises under the guise of obtaining sales personnel when the purpose is to first sell or lease goods or services to the sales personnel applicant; or
>
> (d) Knowingly makes any other false representations in a transaction.

118.   By and through the following conduct, Defendants have violated the law of

the State of Nevada:

> i.   Ross placed advertisements for Plaintiffs that contained significant errors;

46

ii. Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

iii. After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv. Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v. Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

119. Under the terms of the Nevada Act, and as a result of Defendants' unlawful conduct, Plaintiff Leo Petrini is entitled to recover damages, as well as attorneys' fees and costs.

120. While the precise amount of Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT FIFTEEN
## VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT – N.H. REV. STAT. ANN. §§ 358-A:1 ET SEQ. PLAINTIFFS JOHN TONNESON AND ACUSHNET TRANSMISSION, LLC. AGAINST DEFENDANT COTTMAN

121. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

47

122.   Under the terms of the applicable law of the State of New Hampshire,
Plaintiffs John Tonneson and Acushnet Transmission, Inc. are "persons" under the
definitions of the Act, and therefore are entitled the protections of the New Hampshire
Consumer Protection Act.

123.   Under the terms of the New Hampshire Act, it is unlawful for a Defendant
such as Cottman to engage in a deceptive act or practice in the conduct of any trade or
commerce within this state.

124.   Cottman has violated the law of the State of New Hampshire by making
the following false representations and material omissions, which constitute deceptive
acts:

    i.    That Cottman System franchisees do not need automotive experience to succeed;

    ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

    iii.    That the average sales for Cottman System franchisees were over $500,000;

    iv.    That the average profit realized by Cottman System franchisees was over $100,000;

    v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

    vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

    vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

    viii.    That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to