effectively "focus solely on your market and the area surrounding your center";

ix. That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x. That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii. That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii. That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv. That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

125. Under the terms of the New Hampshire Act, and as a result of Defendant's unlawful conduct, Plaintiffs John Tonneson and Achushnet Transmission, LLC are entitled to recover damages, as well as attorneys' fees and costs.

126. While the precise amount of Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT SIXTEEN
## VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT – N.H. REV. STAT. ANN. §§ 358-A:1 ET SEQ. PLAINTIFFS JOHN TONNESON AND ACUSHNET TRANSMISSION, LLC. AGAINST DEFENDANTS COTTMAN AND ROSS

127. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

128. Under the terms of the applicable law of the State of New Hampshire, Plaintiffs John Tonneson and Acushnet Transmission, Inc. are "persons" under the definitions of the Act, and therefore are entitled to the protections of the New Hampshire Consumer Protection Act.

129. Under the terms of the New Hampshire Act, it is unlawful for Defendants such as Cottman and Ross to engage in a deceptive act or practice in the conduct of any trade or commerce within this state.

130. By and through the following conduct, Cottman and Ross have violated the law of the State of New Hampshire:

> i. Ross placed advertisements for Plaintiffs that contained significant errors;
>
> ii. Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

   iii.    After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

   iv.    Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

   v.    Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

131.  Under the terms of the Act, and as a result of Defendants' unlawful conduct, Plaintiffs John Tonneson and Achushnet Transmission, LLC are entitled to recover damages, as well as attorneys' fees and costs.

132.  While the precise amount of Plaintiffs' damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT SEVENTEEN
## VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT –
## N.C. GEN. STAT. §§ 75-1 ET SEQ.
## PLAINTIFFS PRAVIN PATEL, NARAN, INC., MARK VANDIVIER, AND
## MKV SERVICES, INC. AGAINST DEFENDANT COTTMAN

133.  Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

134.  Under the terms of the applicable law of the State of North Carolina, Plaintiffs Pravin Patel, Naran, Inc., Mark Vandivier, and MKV Services, Inc. are protected by North Carolina law.

135.   Further, under the terms of the North Carolina Act, it is unlawful for a Defendant such as Cottman to engage in unfair or deceptive acts or practices in or affecting commerce.

136.   Cottman has violated the law of the State of North Carolina by making the following false representations and material omissions:

    i.    That Cottman System franchisees do not need automotive experience to succeed;

    ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

    iii.    That the average sales for Cottman System franchisees were over $500,000;

    iv.    That the average profit realized by Cottman System franchisees was over $100,000;

    v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

    vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

    vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

    viii.    That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

    ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

    x.    That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training

program, and assistance in locating and providing skilled transmission repair technicians;

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii. That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii. That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv. That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

137. Defendant Cottman, by its decision to merge the Cottman System into AAMCO, has engaged in unfair competition in violation of the Act by, among other things:

i. Failing to "continue to develop, promote, and protect the goodwill and reputation associated with the Cottman names and marks and the Cottman System";

ii. Encouraging Cottman franchisees to convert to AAMCO, significantly diminishing the number of existing Cottman franchises;

iii. Refusing to permit franchisees participating in this litigation to convert to the AAMCO brand;

iv. Ceasing to offer new Cottman franchises or to grow the Cottman System; and

53

v.     Favoring AAMCO over Cottman and permitting AAMCO stores to compete with existing Cottman franchises in areas in which Franchisees were protected from competition by their franchise agreements.

138.   As a result of these unfair acts, Franchisees still in business as of the date

of the merger transaction have been harmed in the following ways, among others:

i.     The merger has placed Franchisees at a competitive disadvantage. For example, since the AAMCO merger, there has been a substantial decrease in the number of Cottman centers and a correlative increase in the number of AAMCO centers, as Cottman franchisees not participating in the litigation are encouraged to switch to AAMCO. Prior to the merger, there were over 400 Cottman centers available to provide national warranty service. This gave Cottman franchisees a strong marketing advantage. Now, as a result of the merger, there has been a very significant decrease in the number of Cottman centers, placing franchisees who did not or could not convert to AAMCO at a competitive disadvantage.

ii.    The significant diminution in the number of Cottman centers resulting from the AAMCO merger has diluted the value of the Cottman brand.

iii.   The loss of business resulting from the negative effects of the merger has forced some Franchisees to close their doors, effecting a *de facto* termination of their franchise agreements.

139.   Under the terms of the Act, and as a result of Defendant's unlawful

conduct, Plaintiffs Pravin Patel, Naran, Inc., Mark Vandivier, and MKV Services, Inc. are

entitled to recover damages, treble damages, as well as attorneys' fees.

140.   While the precise amount of each Plaintiff's damages cannot now be

determined with precision, such damages are in excess of $75,000. A more precise

amount to which each Plaintiff is entitled will be presented at a trial on the merits of this

matter.

## COUNT EIGHTEEN
## VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT –
## N.C. GEN. STAT. §§ 75-1 ET SEQ.
## PLAINTIFFS PRAVIN PATEL, NARAN, INC., MARK VANDIVIER, AND
## MKV SERVICES, INC. AGAINST DEFENDANTS COTTMAN AND ROSS

141. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

142. Under the terms of the applicable law of the State of North Carolina, Plaintiffs Pravin Patel, Naran, Inc., Mark Vandivier, and MKV Services, Inc. are protected by North Carolina law.

143. Further, under the terms of the North Carolina Act, it is unlawful for Defendants such as Cottman and Ross to engage in unfair or deceptive acts or practices in or effecting commerce.

144. By and through the following conduct, Defendants have violated the law of the State of North Carolina:

      i.    Ross placed advertisements for Plaintiffs that contained significant errors;

      ii.   Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

     iii.  After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv. Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v. Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

145. Under the terms of the Act, and as a result of Defendants' unlawful conduct, Plaintiffs Pravin Patel, Naran, Inc., Mark Vandivier, and MKV Services, Inc. are entitled to recover damages, treble damages, as well as attorneys' fees.

146. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT NINETEEN
## VIOLATION OF THE OHIO UNFAIR DECEPTIVE AND UNCONSCIONABLE ACTS OR PRACTICES ACT – OHIO REV. CODE ANN. §§ 1345-01 ET SEQ. PLAINTIFFS C. JAMES BLUE, XTRANX, INC., ERIC J. EBELING, EJE, INC., THOMAS C. HAVAICH, HAVAICH TRANSMISSION, LLC, JOHN MULLEN, KJV ENTERPRISES, INC., FRANK TAMBURELLO, AND FRAGIN, INC. AGAINST DEFENDANT COTTMAN

147. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

148. Under the terms of the applicable law of the State of Ohio, Plaintiffs C. James Blue, Xtranx, Inc., Eric J. Ebeling, EJE, Inc., Thomas C. Havaich, Havaich Transmission, LLC, John Mullen, KJV Enterprises, Inc., Frank Tamburello, and Fragin, Inc. are both "persons" and "consumers" meant to be protected by the terms of the Ohio Act. Moreover, Defendants are "suppliers" and are meant to be subject to the prohibitions contained within the Ohio Act.

149. Further, under the terms of the Ohio Act, it is unlawful for a supplier to commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier who violates the Ohio Act is unlawful whether it occurs before, during, or after the transaction.

150. Cottman has violated the law of the State of Ohio by making the following false representations and material omissions:

    i.    That Cottman System franchisees do not need automotive experience to succeed;

    ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

    iii.    That the average sales for Cottman System franchisees were over $500,000;

    iv.    That the average profit realized by Cottman System franchisees was over $100,000;

    v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

    vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

    vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

    viii.    That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

    ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.    That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.    That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.    That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.    That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.    That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv.    That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

151.   Defendant Cottman, by its decision to merge the Cottman System into

AAMCO, has engaged in unfair acts in violation of the Act by, among other things:

i.    Failing to "continue to develop, promote, and protect the goodwill and reputation associated with the Cottman names and marks and the Cottman System";

ii.    Encouraging Cottman franchisees to convert to AAMCO, significantly diminishing the number of existing Cottman franchises;

iii.    Refusing to permit franchisees participating in this litigation to convert to the AAMCO brand;

iv.    Ceasing to offer new Cottman franchises or to grow the Cottman System; and

    v.   Favoring AAMCO over Cottman and permitting AAMCO stores to compete with existing Cottman franchises in areas in which Franchisees were protected from competition by their franchise agreements.

152. As a result of these unfair acts, Franchisees still in business as of the date

of the merger transaction have been harmed in the following ways, among others:

    i.   The merger has placed Franchisees at a competitive disadvantage. For example, since the AAMCO merger, there has been a substantial decrease in the number of Cottman centers and a correlative increase in the number of AAMCO centers, as Cottman franchisees not participating in the litigation are encouraged to switch to AAMCO. Prior to the merger, there were over 400 Cottman centers available to provide national warranty service. This gave Cottman franchisees a strong marketing advantage. Now, as a result of the merger, there has been a very significant decrease in the number of Cottman centers, placing franchisees who did not or could not convert to AAMCO at a competitive disadvantage.

    ii.   The significant diminution in the number of Cottman centers resulting from the AAMCO merger has diluted the value of the Cottman brand.

    iii.   The loss of business resulting from the negative effects of the merger has forced some Franchisees to close their doors, effecting a *de facto* termination of their franchise agreements.

153. Under the terms of the Act, and as a result of Defendant's unlawful conduct, Plaintiffs C. James Blue, Xtranx, Inc., Eric J. Ebeling, EJE, Inc., Thomas C. Havaich, Havaich Transmission, LLC, John Mullen, KJV Enterprises, Inc., Frank Tamburello, and Fragin, Inc. are entitled to recover damages, as well as attorneys' fees.

154. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWENTY
## VIOLATION OF THE OHIO UNFAIR DECEPTIVE AND UNCONSCIONABLE ACTS OR PRACTICES ACT –
## OHIO REV. CODE ANN. §§ 1345-01 ET SEQ.
## PLAINTIFFS C. JAMES BLUE, XTRANX, INC., ERIC J. EBELING, EJE, INC., THOMAS C. HAVAICH, HAVAICH TRANSMISSION, LLC,  JOHN MULLEN, KJV ENTERPRISES, INC., FRANK TAMBURELLO, AND FRAGIN, INC. AGAINST DEFENDANTS COTTMAN AND ROSS

155.   Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

156.   Under the terms of the applicable law of the State of Ohio, Plaintiffs C. James Blue, Xtranx, Inc., Eric J. Ebeling, EJE, Inc., Thomas C. Havaich, Havaich Transmission, LLC,  John Mullen, KJV Enterprises, Inc., Frank Tamburello, and Fragin, Inc. are both "persons" and "consumers" meant to be protected by the terms of the Ohio Act.  Moreover, Cottman and/or Ross are both "suppliers" and are meant to be subject to the prohibitions contained within the Ohio Act.

157.   Further, under the terms of the Ohio Act, it is unlawful for a supplier to commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier who violates the Ohio Act is unlawful whether it occurs before, during, or after the transaction.

158.   By and through the following conduct, Cottman and/or Ross have violated the law of the State of Ohio:

    i.   Ross placed advertisements for Plaintiffs that contained significant errors;

    ii.  Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

iii.  After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv.  Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v.  Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

159.  Under the terms of the Act, and as a result of Cottman's and/or Ross' unlawful conduct, Plaintiffs C. James Blue, Xtranx, Inc., Eric J. Ebeling, EJE, Inc., Thomas C. Havaich, Havaich Transmission, LLC,  John Mullen, KJV Enterprises, Inc., Frank Tamburello, and Fragin, Inc. are entitled to recover damages, as well as attorneys' fees.

160.  While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000.  A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWENTY-ONE
## VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT – OKLA. STAT. TIT. 15, §§ 751 ET SEQ.
## PLAINTIFFS MARK EZELL , 2 MONKEYS, INC., BOB MCWEENEY AND DIANA MCWEENEY AGAINST DEFENDANT COTTMAN

161.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

162.    Under the terms of the applicable law of the State of Oklahoma, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Bob McWeeney, and Diana McWeeney are "persons" under the terms of the Oklahoma Act.

163.    Further, under the terms of the Oklahoma Act, it is unlawful for a Defendant such as Cottman to engage in any unfair trade practices or deceptive trade practices.

164.    Defendant has violated the law of the State of Oklahoma by making the following false representations and material omissions, which constitute unfair trade practices or deceptive trade practices:

   i.    That Cottman System franchisees do not need automotive experience to succeed;

   ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

   iii.    That the average sales for Cottman System franchisees were over $500,000;

   iv.    That the average profit realized by Cottman System franchisees was over $100,000;

   v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.   That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.  That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.     That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.    That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.   That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.  That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.   That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv.    That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

165. Under the terms of the Act, and as a result of Defendant's unlawful conduct, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Bob McWeeney, and Diana McWeeney are entitled to recover their damages.

166. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWENTY-TWO
## VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT – OKLA. STAT. TIT. 15, §§ 751 ET SEQ.
## PLAINTIFFS MARK EZELL , 2 MONKEYS, INC., BOB MCWEENEY AND DIANA MCWEENEY AGAINST DEFENDANTS COTTMAN AND ROSS

167. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

168. Under the terms of the applicable law of the State of Oklahoma, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Bob McWeeney, and Diana McWeeney are "persons" under the terms of the Oklahoma Act.

169. Further, under the terms of the Oklahoma Act, it is unlawful for Defendants such as Cottman and Ross to engage in any unfair trade practices or deceptive trade practices.

170. By and through the following conduct, which constitutes unfair trade practices or deceptive trade practices, Defendants have violated the law of the State of Oklahoma:

i. Ross placed advertisements for Plaintiffs that contained significant errors;

ii.    Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

iii.   After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv.    Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v.     Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

171.   Under the terms of the Act, and as a result of Defendants' unlawful conduct, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Bob McWeeney, and Diana McWeeney are entitled to recover their damages.

172.   While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWENTY-THREE
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT –
## TEX. BUS. & COM. CODE ANN. §§ 17.41 ET SEQ.
## PLAINTIFFS MARK EZELL AND 2 MONKEYS, INC.  MARK A. WEISBART,
## TRUSTEE (CUTLIP), CUTLIP ENTERPRISES, LLC, EATON AUTO SERVICE, INC.,
## CHK ENTERPRISES, INC., DALE DABBS, TROY GEORGE, AND SCRATCH
## ENTERPRISES, INC.
## AGAINST DEFENDANT COTTMAN

173.   Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

174.   Under the terms of the applicable law of the State of Texas, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Mark A. Weisbart, Trustee, Cutlip Enterprises, LLC, Eaton Auto Service, Inc., CHK Enterprises, Inc., Dale Dabbs, Troy George, and Scratch Enterprises, Inc. are "persons" and "consumers" meant to be protected by the terms of the Texas Deceptive Trade Practices Act.

175.   Further, under the terms of the Texas Act, it is unlawful for a Defendant such as Cottman to engage in any of the following conduct:

> (a) Represent that goods or services have characteristics which they do not have;

> (b) Represent that services are of a particular standard if they are of another;

> (c) Represent an agreement confers or involves rights or remedies or obligations which it does not have or involve; or

> (d) Any unconscionable action or course of action that is a producing cause of economic damage or damage for mental anguish to a consumer.

176.   Defendant has violated the law of the State of Texas by making the following false representations and material omissions:

66

i.   That Cottman System franchisees do not need automotive experience to succeed;

ii.  That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

iii. That the average sales for Cottman System franchisees were over $500,000;

iv.  That the average profit realized by Cottman System franchisees was over $100,000;

v.   That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.  That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii. That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.  That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.   That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.  That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii. That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

67

xiii.   That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.   That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv.   That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

177.   Under the terms of the Texas Act, and as a result of Defendant's unlawful conduct, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Mark A. Weisbart, Trustee, Cutlip Enterprises, LLC, Eaton Auto Service, Inc., CHK Enterprises, Inc., Dale Dabbs, Troy George, and Scratch Enterprises, Inc. are entitled to recover damages, attorneys' fees and costs.

178.   While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWENTY-FOUR
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT – TEX. BUS. & COM. CODE ANN. §§ 17.41 ET SEQ. PLAINTIFFS MARK EZELL AND 2 MONKEYS, INC. GARRY CUTLIP, CUTLIP ENTERPRISES, LLC, EATON AUTO SERVICE, INC., CHK ENTERPRISES, INC., DALE DABBS, TROY GEORGE, AND SCRATCH ENTERPRISES, INC. AGAINST DEFENDANT COTTMAN AND ROSS

179. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

180. Under the terms of the applicable law of the State of Texas, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Garry Cutlip, Cutlip Enterprises, LLC, Eaton Auto Service, Inc., CHK Enterprises, Inc., Dale Dabbs, Troy George, and Scratch Enterprises, Inc. are "persons" and "consumers" meant to be protected by the terms of the Texas Deceptive Trade Practices Act.

181. Further, under the terms of the Texas Act, it is unlawful for Defendants such as Cottman and Ross to engage in any of the following conduct:

- (a) Represent that goods or services have characteristics which they do not have;
- (b) Represent that services are of a particular standard if they are of another;
- (c) Represent an agreement confers or involves rights or remedies or obligations which it does not have or involve; or
- (d) Any unconscionable action or course of action that is a producing cause of economic damage or damage for mental anguish to a consumer.

182. By and through the following conduct, Defendants have violated the law of the State of Texas:

i.    Ross placed advertisements for Plaintiffs that contained significant errors;

ii.   Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

iii.  After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv.   Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v.    Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

183.   Under the terms of the Act, and as a result of Defendants' unlawful conduct, Plaintiffs Mark Ezell, 2 Monkeys, Inc., Garry Cutlip, Cutlip Enterprises, LLC, Eaton Auto Service, Inc., CHK Enterprises, Inc., Dale Dabbs, Troy George, and Scratch Enterprises, Inc. are entitled to recover damages, attorneys' fees and costs.

184.   While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

70

## COUNT TWENTY-FIVE
## VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT –
## UTAH CODE ANN. §§ 13-11-1 ET SEQ.
## PLAINTIFFS DALE KERSHNER, KSI ENTERPRISES, INC., KELLY H.
## DOCKSTADER AND DOCKSTADER CORPORATION
## AGAINST DEFENDANT COTTMAN

185.   Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

186.   Under the terms of the applicable law of the State of Utah, Plaintiffs Dale Kershner, KSI Enterprises, Inc., Kelly H. Dockstader and Dockstader Corporation are involved both in "consumer transaction" and are "persons" under the definitions of the Act, and therefore are entitled the protections of the Utah Consumer Sales Practices Act.

187.   Further, under the terms of the Utah Act, it is unlawful for a Defendant such as Cottman to engage in a deceptive act or practice. Without limitation, such acts or practices include:

> (a) Indicating that the subject of a consumer transaction has performance characteristics or benefits that it does not have;
>
> (b) That the subject of a consumer transaction is of a particular standard when it is not; or
>
> (c) Engage in any other unconscionable act or practice.

188.   Cottman has violated the law of the State of Utah by making the following false representations and material omissions:

> i.   That Cottman System franchisees do not need automotive experience to succeed;

71

ii.     That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

iii.    That the average sales for Cottman System franchisees were over $500,000;

iv.     That the average profit realized by Cottman System franchisees was over $100,000;

v.      That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.     That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.   That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.     That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.      That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.     That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.    That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.   That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge

the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.  That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv.   That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

189. Under the terms of the Utah Act, and as a result of Defendant's unlawful conduct, Plaintiffs Dale Kershner, KSI Enterprises, Inc., Kelly H. Dockstader and Dockstader Corporation are entitled to recover damages, as well as attorneys' fees and costs.

190. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWENTY-SIX
## VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT – UTAH CODE ANN. §§ 13-11-1 ET SEQ. PLAINTIFFS DALE KERSHNER, KSI ENTERPRISES, INC., KELLY H. DOCKSTADER AND DOCKSTADER CORPORATION AGAINST DEFENDANT COTTMAN AND ROSS

191. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

192. Under the terms of the applicable law of the State of Utah, Plaintiffs Dale Kershner, KSI Enterprises, Inc., Kelly H. Dockstader and Dockstader Corporation are both involved in "consumer transactions" and are "persons" under the definitions of the

73

Act, and therefore are entitled the protections of the Utah Consumer Sales Practices Act.

193.   Further, under the terms of the Utah Act, it is unlawful for Defendants such as Cottman and Ross to engage in a deceptive act or practice.  Without limitation, such acts or practices include:

(a) Indicating that the subject of a consumer transaction has performance characteristics or benefits that it does not have;

(b) That the subject of a consumer transaction is of a particular standard when it is not; or

(c) Engage in any other unconscionable act or practice.

194.   By and through the following conduct, Defendants have violated the law of the State of Utah:

i.   Ross placed advertisements for Plaintiffs that contained significant errors;

ii.   Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

iii.   After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

iv.   Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

v.   Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff

74

and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

195. Under the terms of the Utah Act, and as a result of Defendants' unlawful conduct, Plaintiffs Dale Kershner, KSI Enterprises, Inc., Kelly H. Dockstader and Dockstader Corporation are entitled to recover damages, as well as attorneys' fees and costs.

196. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT TWENTY-SEVEN
## VIOLATION OF THE WISCONSIN FRANCHISE INVESTMENT LAW –
## WIS. STAT. §§ 553.01 ET SEQ.
## PLAINTIFFS DOUGLAS R. SPEER AND D&C SPEER INVESTMENTS, LLC
## AGAINST DEFENDANTS COTTMAN AND LEFF

197. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

198. Under the terms of the applicable law of the State of Wisconsin, Plaintiffs Douglas R. Speer and D&C Speer Investments, LLC are franchisees, and Defendant Cottman is a franchisor.

199. Further, under the terms of the Wisconsin Act, it is unlawful for a franchisor to engage in any of the following conduct:

> (a) Making or causing to be made, in any document filed with the Division or in any proceeding under Wisconsin law any statement which is, at the time and in the light of the circumstances under which it is made, false or misleading in any material respect or, in connection with any statement required to be made under the WFIL, omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they are made, not misleading; or

(b) Offer or sell a franchise in Wisconsin by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

200.   Cottman has violated the law of the State of Wisconsin by making the following false representations and material omissions:

  i. That Cottman System franchisees do not need automotive experience to succeed;

  ii. That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

  iii. That the average sales for Cottman System franchisees were over $500,000;

  iv. That the average profit realized by Cottman System franchisees was over $100,000;

  v. That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

  vi. That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

  vii. That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

  viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

  ix. That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

  x. That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training

program, and assistance in locating and providing skilled transmission repair technicians;

xi.   That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.  That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

    That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiii. That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xiv.  That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

201. Further, under the terms of the law of Wisconsin, Defendant Todd P. Leff

is jointly and severally liable as a "control person" of Defendant Cottman.

202. Under the terms of the Act, and as a result of Defendants' unlawful

conduct, Plaintiffs Douglas R. Speer and D&C Speer Investments, LLC are entitled to

rescind their franchise agreement and recover damages.

203. While the precise amount of each Plaintiff's damages cannot now be

determined with precision, such damages are in excess of $75,000. A more precise

amount to which each Plaintiff is entitled will be presented at a trial on the merits of this

matter.

## COUNT TWENTY-EIGHT
## COMMON LAW FRAUD AGAINST DEFENDANTS COTTMAN AND LEFF

204. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

205. Defendants made false and material misrepresentations and omissions of fact to the Plaintiffs, as set forth above. Defendants made such statements and material omissions knowing that they were false and intending that Plaintiffs rely upon them in deciding to enter into franchise agreements with Cottman and to invest hundreds of thousands of dollars in a franchise.

206. The Plaintiffs reasonably relied upon the false representations and material omissions of Defendants in making the decision to enter into a franchise and invest in a Cottman System franchise as described more fully above.

207. As a result of the Plaintiffs' reliance upon the false representations of Defendants, the Plaintiffs have lost thousands of dollars.

208. The Plaintiffs are entitled to rescind their franchise agreements and to recover from Defendants rescission damages, consisting of the total of the amount invested in their franchises, the total lost as a result of operation of the franchises, the amount invested in mitigating damages, less the consideration received from Defendants and any other benefits received from the franchises as well as the salvage value of the assets, plus interest.

## COUNT TWENTY-NINE
## NEGLIGENT MISREPRESENTATION
## AGAINST DEFENDANTS COTTMAN AND LEFF

209. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

210. Defendants had a duty to use reasonable care in making representations and statements to prospective and new franchisees and to take reasonable care to ensure that such statements and representations were not false or misleading.

211. Defendants breached their duty of care to Plaintiffs by making false and misleading representations and material omissions as set forth above.

212. The Plaintiffs reasonably relied upon the false representations of Defendants and their representatives in deciding to enter into their franchise agreements and to invest in Cottman System franchises.

213. The Plaintiffs are entitled to rescind their franchise agreements and to recover from Defendants rescission damages, consisting of the total of the amount invested in their franchises, the total lost as a result of operation of the franchises, the amount invested in mitigating damages, less the consideration received from Defendants and any other benefits received from the franchises as well as the salvage value of the assets, plus interest.

## COUNT THIRTY
## BREACH OF CONTRACT AND THE
## COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT
## COTTMAN

214. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

215. In every contract, by operation of law, there is an implied covenant of good faith and fair dealing, which requires the parties to the agreement to act in good faith and in accordance with reasonable standards of fair dealing in the trade. The implied covenant also prohibits either party from engaging in any conduct or in doing anything that deprives the other party of the fruits of the agreement or the benefit of the bargain. The implied covenant requires that Cottman act reasonably in the performance of its duties, and, among other things, refrain from engaging in conduct that would cause Plaintiffs to operate at losses or to take actions that would cause Plaintiffs' businesses to fail.

216. Cottman has breached its express contractual duties and the implied covenant of good faith and fair dealing to Plaintiffs by violating the terms of the parties' agreements, and Plaintiffs' reasonable expectations of Defendant's performance, support, and assistance as prescribed under the parties' franchise agreements and as described more fully above.

217. While the precise amount of Plaintiffs' damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which Plaintiffs are entitled will be presented at a trial on the merits of this matter.

## COUNT THIRTY-ONE
## BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS COTTMAN AND ROSS

218. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

219. The Defendants' conduct as alleged above created a fiduciary relationship between Defendants and Plaintiffs and imposed fiduciary duties on Defendants in favor of the Plaintiffs. In particular, Defendants acted as agents for Plaintiffs with respect to purchasing and placing advertisement, management of Plaintiffs' advertising accounts, accounting for the amounts spent on behalf of individual Plaintiffs by Defendant Cottman through its affiliate, Ross, and as to acting as the listing agent for the sale of certain Plaintiffs' franchises.

220. The Defendants' actions, as described above, constitute breaches of their fiduciary duties toward Plaintiffs.

221. Each breach by the Defendants of their fiduciary duties was a proximate cause of damages to each Plaintiff and entitles Plaintiffs to receive, as disgorgement, all amounts Plaintiffs paid to Defendants for advertising fees, and an accounting for each Plaintiffs' account.

## COUNT THIRTY-TWO
## VIOLATION OF SECTION 2(C) OF THE ROBINSON PATMAN ACT AGAINST DEFENDANT COTTMAN

222. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

223. Section 2(c) of the Robinson-Patman Act, 15 U.S.C. 12 *et seq.*, provides, in relevant part, as follows:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein ...

81

224. Cottman engages (or has engaged) in commerce by, among other things, establishing contracts for the provision of equipment, insurance, advertising and other services and accessories to Cottman franchisees throughout the United States.

225. Cottman has entered into exclusive and/or preferred contracts with particular vendors to provide equipment, insurance, advertising and other services and accessories to franchisees. In this connection, Cottman has solicited and accepted payments and other value from third-party vendors ("payments") in exchange for granting such vendors the opportunity to access and provide equipment, insurance, advertising and other services and accessories to the franchisees and to execute agreements to sell equipment, insurance, advertising and other services and accessories to the franchisees.

226. These payments are in fact kickbacks which have been rendered in connection with the sale or purchase of equipment, insurance, advertising and other services and accessories by Cottman's franchisees.

227. The franchisees have been injured and may continue to be injured by these acts because they are restricted in their choice of and access to independent vendors and consequently have paid prices for equipment, insurance, advertising and other services and accessories that were higher than they would have paid in the absence of Cottman's kickback scheme.

228. Cottman's kickback scheme is *per se* unlawful and constitutes *per se* competitive injury.

229. By reason of the foregoing, Cottman has violated Section 2(c) of the Robinson-Patman Act, and the Plaintiffs are entitled to treble damages therefor, the costs of this litigation, attorneys' fees and prejudgment interest, pursuant to 15 U.S.C. 15(a).

## COUNT THIRTY-THREE
## VIOLATION OF RICO: 18 U.S.C. § 1962(b) AGAINST DEFENDANT COTTMAN

230. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

231. Cottman has violated the civil provisions of the RICO Statute as described more fully below.

232. Under 18 U.S.C. § 1964(c)

> any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys' fee....

233. Under 18 U.S.C. § 1961(3), a "person" for the purposes of the Civil RICO statute is defined as "any individual or entity capable of holding a legal or beneficial interest in a property."

234. The RICO statute defines the term "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

235. Cottman is a "person" within the meaning of the RICO Statute, as set forth above. The association of Cottman and Ross constituted an "enterprise" as that term is defined in the RICO Statute.

236. Under 18 U.S.C. § 1962(b):

83

[I]t is unlawful to acquire or maintain any interest in, or control of, any enterprise that is engages in or affects interstate or foreign commerce through a pattern of racketeering activity or collection of any unlawful debt.

237.   Section 1961(1) of RICO defines "racketeering activity" to include any of

the enumerated predicate acts listed in section 1961(1).  Included in the list of predicate

acts are "extortion", "mail fraud" and "wire fraud."

238.   Under 18 U.S.C. § 1951(b)(2), extortion is defined as follows:

The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

Under 18 U.S.C. § 1341, mail fraud is defined as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises … for the purpose of executing such a scheme of artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing....

Under 18 U.S.C. § 1343, wire fraud is defined as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, television, communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice...

84

239. At all times relevant to the claims made herein, Cottman has acquired and maintained an interest in, and control of, the enterprise consisting of both Cottman, Ross, and Cottman Communications, and their collusion together, by engaging in the false, fraudulent, and illegal acts set forth above, which took place in interstate commerce, which constituted acts of extortion, wire fraud and mail fraud – i.e., sending misleading and false offering circulars and other documents through the mails, making false and fraudulent statements via the telephone and otherwise, and using wrongful threats of economic harm to obtain property from franchisees to which Cottman was not contractually entitled.

240. The activities of the enterprise of Cottman and Ross constituted a pattern of racketeering in that the activities were both continuous and related: the false acts were all intended to induce scores of persons to become franchisees of Cottman; to assent to Ross' provision of advertising; to provide false accounting to franchisees of the amounts and costs of advertising placed by Ross; to coerce individual franchisees to pay Cottman more money than they were obligated to pay under their franchise agreements; and to acquire title to certain failed franchises. Defendants induced many persons to become franchisees under franchise agreements pursuant to which they would continue to pay Cottman for advertising fees for many years, and the scheme threatens to continue.

241. Plaintiffs have been injured in their business and property as a result of Defendant's violations of 18 U.S.C. § 1862(b). Specifically, Plaintiffs have been deprived of the amounts that they paid to Cottman pursuant to the franchise agreements, and for additional amounts. As a direct and proximate result of

Defendant's violations of 18 U.S.C. § 1862(b), Plaintiffs have suffered damages in an amount undetermined at this time, but believed to be in excess of $75,000, which will be demonstrated at trial.

## COUNT THIRTY-FOUR
## VIOLATION OF RICO: 18 U.S.C. § 1962(c) AGAINST COTTMAN

242. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

243. Under 18 U.S.C. § 1962(c):

It is unlawful for any person to conduct or participate in the conduct of the affairs of an enterprise that is engaged in or affects interstate or foreign commerce through a pattern of racketeering activity or collection of an unlawful debt.

244. At all times relevant hereto, Cottman has either conducted or participated in an ongoing and continuous enterprise designed to induce scores of persons to become franchisees of Cottman; to assent to Ross' provision of advertising services as individual franchisees' agents; and to coerce individual franchisees to pay more money than they were obligated to pay under their franchise agreements, which continuous effort constituted a pattern of racketeering activity.

245. The enterprise engaged in interstate commerce to accomplish its scheme of defrauding, deceiving, and threatening Plaintiffs, and its actions affected interstate commerce in that the amounts Cottman received were based on the sale and purchase of items that crossed state lines.

246. Defendant's receipt of the funds paid by Plaintiffs harmed Plaintiffs' businesses in that those amounts should have inured to the Plaintiffs' benefit, rather than that of Cottman.

86

247. Plaintiffs have been injured in their business and property as a result of Defendants' violations of 18 U.S.C. § 1862(c). Plaintiffs have been deprived of the amounts that they paid to Cottman pursuant to the franchise agreements, and for additional amounts. As a direct and proximate result of Cottman's violations of 18 U.S.C. § 1862(c), Plaintiffs have suffered damages in an amount undetermined at this time, but believed to be in excess of $75,000, which will be demonstrated at trial.

## COUNT THIRTY-FIVE
## VIOLATION OF RICO:  18 U.S.C. § 1962(d) AGAINST DEFENDANT COTTMAN

248. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

249. Under 18 U.S.C. § 1962(d) it is unlawful:

> For any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

250. At all times relevant hereto, Defendant Cottman has conspired with Ross and Cottman Communications in violation of Sections 1962(b) and (c), as alleged above.

251. Plaintiffs have been injured in their business and property as a result of Defendant's violations of 18 U.S.C. § 1862(b).   Specifically, Plaintiffs have been deprived of the amount of the money that Cottman has obtained unlawfully by reason of the conspiracy. As a direct and proximate result of Cottman's violations of 18 U.S.C. § 1862(d), Plaintiffs have suffered damages in an amount undetermined at this time, but believed to be in excess of $75,000, which will be demonstrated at trial.

## COUNT THIRTY-SIX
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT – N.J. STAT. ANN. §§ 56:8-1 ET SEQ.
## PLAINTIFFS OZZIE BOMBARO, FIRST QUALITY, INC., AND JOHN PALMER AGAINST DEFENDANT COTTMAN

252.  Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

253.  Under the terms of the applicable law of the State of New Jersey, Plaintiffs Ozzie Bombaro, First Quality, Inc., and John Palmer are persons entitled to protection of the New Jersey Act.

254.  Further, under the terms of the New Jersey Act, it is unlawful for a Defendant such as Cottman to act, use, or employ any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or at the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby.

255.  Defendant has violated the law of the State of New Jersey by making the following false representations and material omissions:

      i.    That Cottman System franchisees do not need automotive experience to succeed;

      ii.   That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

      iii.  That the average sales for Cottman System franchisees were over $500,000;

iv. That the average profit realized by Cottman System franchisees was over $100,000;

v. That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi. That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii. That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii. That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix. That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x. That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii. That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii. That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv. That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a

89

result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

256. Under the terms of the New Jersey Act, and as a result of Defendant's unlawful conduct, Plaintiffs Ozzie Bombaro, First Quality, Inc., and John Palmer are entitled to recover damages, as well as attorneys' fees and costs.

257. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT THIRTY-SEVEN
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT – N.J. STAT. ANN. §§ 56:8-1 ET SEQ.
## PLAINTIFFS OZZIE BOMBARO, FIRST QUALITY, INC., AND JOHN PALMER AGAINST DEFENDANTS COTTMAN AND ROSS

258. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

259. Under the terms of the applicable law of the State of New Jersey, Plaintiffs Ozzie Bombaro, First Quality, Inc., and John Palmer are persons entitled to protection of the New Jersey Act.

260. Further, under the terms of the New Jersey Act, it is unlawful for Defendants such as Cottman and Ross to act, use, or employ any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent

90

that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or at the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby.

261. By and through the following conduct, Defendants have violated the law of the State of New Jersey:

     i.    Ross placed advertisements for Plaintiffs that contained significant errors;

    ii.    Ross has consistently failed to secure the best prices for Plaintiffs (despite representing nearly 400 franchisees in the Cottman System, Plaintiffs were frequently able to secure lower prices for advertising themselves but were forced by Cottman to allow Ross to place their advertising, all without any explanation for the higher prices);

    iii.    After establishing individual "accounts" for Plaintiffs, Ross overspent, overcharged, and falsely and/or inaccurately accounted for individual Plaintiff's "accounts," and Cottman demanded additional payments from franchisees over the advertising fees due under their franchise agreements and threatened to suspend, and, in many cases did suspend, advertising and telephone services for the Center's telephone numbers when Plaintiffs were unable or unwilling to pay Cottman these additional payments;

    iv.    Cottman failed to refund the unspent amounts in a Plaintiff's account when that Plaintiff closed or transferred their franchise; and

    v.    Cottman has refused to provide Plaintiffs with accountings of individual accounts, including an accounting of the amounts paid by each Plaintiff and evidence of the purchases and actual placements of advertisements on behalf of each Plaintiff by Ross.

262. Under the terms of the New Jersey Act, and as a result of Defendants' unlawful conduct, Plaintiffs Ozzie Bombaro, First Quality, Inc., and John Palmer are entitled to recover damages, as well as attorneys' fees and costs.

263. While the precise amount of Plaintiff's damages cannot now be determined with precision, such damages are in excess of \$75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

## COUNT THIRTY-EIGHT
## VIOLATION OF THE NEW YORK FRANCHISE SALES ACT
## N.Y. GEN. BUS. L. §§ 680 ET SEQ.
## PLAINTIFFS CHARLES DAVIDSON, C&F HAUGH, INC., BIG D MANAGEMENT, TAMESHWAR RAMLALL, JET SEAL, LLC, JOHN STURTEVANT, AND STURTEVANT GROUP, INC. AGAINST DEFENDANTS COTTMAN AND LEFF

264. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

265. Under the terms of the applicable law of the State of New York, Plaintiffs Charles Davidson, C&F Haugh, Inc., Big D Management, Tameshwar Ramlall, Jet Seal, LLC, John Sturtevant, and Sturtevant Group, Inc. are franchisees, and Defendant Cottman is a franchisor, within the meaning of N.Y. Gen. Bus. L. § 680 et seq.

266. Further, under the terms of the New York Franchise Sales Act, it is unlawful for a franchisor to engage in any of the following conduct:

> (a) Make any untrue statement of a material fact in any application, notice, statement, prospectus or report filed with the department, or willfully to admit to state in any such application, notice, statement, prospectus, or report any material fact which is required to be stated therein, or to fail to notify the department of any material change;
>
> (b) Employ any device, scheme, or artifice to defraud in connection with the offer, sale, or purchase of any franchise;
>
> (c) Make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the offer, sale, or purchase of any franchise; or

(d) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in the offer, sale, or purchase of any franchise.

267. Cottman has violated the law of the State of New York by making the following false representations and material omissions:

    i.    That Cottman System franchisees do not need automotive experience to succeed;

    ii.    That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

    iii.    That the average sales for Cottman System franchisees were over $500,000;

    iv.    That the average profit realized by Cottman System franchisees was over $100,000;

    v.    That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

    vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

    vii.    That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

    viii.    That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

    ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

    x.    That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

93

xi. That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii. That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii. That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv. That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

268. Further, under the terms of the law of New York, Defendant Leff is jointly and severally liable as "control person" of Defendant Cottman.

269. Under the terms of the Act, and as a result of Defendants' unlawful conduct, Plaintiffs Charles Davidson, Big D Management, C&F Haugh, Inc., Tameshwar Ramlall, Jet Seal, LLC, John Sturtevant, and Sturtevant Group, Inc. are entitled to recover damages, as well as costs and attorneys' fees.

270. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

94

## COUNT THIRTY-NINE
## VIOLATION OF THE VIRGINIA RETAIL FRANCHISING ACT -
## VA. CODE ANN. §§ 13.1-557 ET SEQ.
## PLAINTIFFS MARK LAWTON, LUCINDA KATZ, KATZ-LAWTON, INC.,
## MAX TOTTEN, AND CHARIOTS LTD., INC.
## AGAINST DEFENDANT COTTMAN

271. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

272. Under the terms of the Virginia Retail Franchising Act, Plaintiffs Mark Lawton, Lucinda Katz, Katz-Lawton, Inc., Max Totten, and Chariots Ltd., Inc. are franchisees, and Defendant Cottman is a franchisor.

273. Further, under the terms of the Virginia Retail Franchising Act, it is unlawful for a franchisor to engage in any of the following conduct:

   (a) Employ any device, scheme, or artifice to defraud;

   (b) Make any untrue statement of material fact or to omit to state a material fact necessary in order to avoid misleading the offeree; or

   (c) To engage in any transaction, practice, or course of business which operates or would operate as a fraud upon the franchisee.

274. Cottman has violated the law of the State of Virginia by making the following false representations and material omissions:

   i.    That Cottman System franchisees do not need automotive experience to succeed;

   ii.   That Cottman System franchisees could expect to "break even," *i.e.*, to have neutral or positive cash flows, within two to three months after opening.

   iii.  That the average sales for Cottman System franchisees were over $500,000;

95

iv.    That the average profit realized by Cottman System franchisees was over $100,000;

v.     That only a minimal number of Cottman System franchisees had closed their franchised stores in the previous years;

vi.    That Cottman, through Ross, would provide appropriate, effective advertising for the franchisees' local and regional markets;

vii.   That Cottman, through Ross, would charge a maximum 10% commission for advertising placed by Ross on a franchisee's behalf when there was no commission charged by the media;

viii.  That Cottman, through Ross, would assign each franchisee their own advertising department representative to develop advertising to effectively "focus solely on your market and the area surrounding your center";

ix.    That Cottman would provide appropriate, effective pre-opening services, including site selection and lease negotiation assistance, demographic studies and site ranking, financing assistance, and store layout and design assistance;

x.     That Cottman would provide franchisees "complete and total support" after opening their franchise stores, including an intensive training program, and assistance in locating and providing skilled transmission repair technicians;

xi.    That Cottman had a National Recruiting Department available to provide lists of qualified transmission technicians that would provide franchisees "top notch technical staff";

xii.   That Plaintiffs who purchased Cottman System stores from Cottman franchisees could rely upon the sales and financial information provided by those Cottman franchisees;

xiii.  That Cottman would "continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks"; Cottman's parent company has announced that it will merge the Cottman System out of existence over the next three years, destroying the value of the goodwill and reputation associated with the Cottman names and marks;

xiv.   That Cottman would not terminate franchisees' franchise agreements without cause or an opportunity to cure any defects, when, in fact, as a result of Cottman's, decision to merge the Cottman System into

96

AAMCO, and therefore out of existence, Cottman has effected a *de facto* termination of then-existing Cottman System franchisees' franchise agreements; and

xv. That Cottman's goal was to sell franchises and then assist its franchisees to successfully operate their Cottman System stores.

275. Under the terms of the Virginia Act, and as a result of Cottman's unlawful conduct, Plaintiffs Mark Lawton, Lucinda Katz, Katz-Lawton, Inc., Max Totten, and Chariots Ltd., Inc. are entitled to recover damages, as well as costs and attorneys' fees.

276. While the precise amount of each Plaintiff's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which each Plaintiff is entitled will be presented at a trial on the merits of this matter.

**WHEREFORE**, the Plaintiffs respectfully request that this Court enter judgment:

A. Rescinding and/or declaring terminated the franchise agreements of the Plaintiffs;

B. Enjoining Defendants' continued violation of state franchise protection and consumer fraud acts;

C. Awarding rescission damages consisting of the amount that they have invested in the franchise less consideration received and the salvage value of the franchise;

D. Awarding such treble damages compensatory, consequential and incidental damages as the franchisees have suffered as provided under the federal RICO statute, 18 U.S.C, § 1964(c), the Robinson-Patman Act, 15 U.S.C. § 15(a), state consumer fraud and deceptive and unfair trade practices acts, and at common law; and

E. Awarding attorneys' fees and costs such other and further relief as this Court deems just and proper.

Dated: *July 17, 2007*

DADY & GARNER, P.A.

J. Michael Dady, Esq. (2062X)
Ronald K. Gardner, Esq. (246797)
Barbara A. Bagdon, Esq. (386452)
5100 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 359-9000

**ATTORNEYS FOR PLAINTIFFS**